## JOHN H. INGALLS ET AL. *v.* THE ROGER SMITH HOTELS CORPORATION

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

1

Argued October 6—decided November 15, 1955

*William C. Strong* and *Joseph M. Kaye,* with whom was *Nathan B. Bernstein* of the New York bar, for the appellant (defendant).

*Morgan P. Ames,* with whom was *Francis P. Schiaroli,* for the appellees (plaintiffs Adams et al.).

*E. Gaynor Brennan* appeared for the appellees (plaintiffs John H. Ingalls et al.).

O'Sullivan, J. The plaintiffs brought this action for a declaratory judgment to determine whether they, as lessors, or the defendant, as lessee, should bear the cost of certain changes ordered by the fire marshal in a hotel building. The court determined that the plaintiffs were obligated to pay for three of the changes and the defendant for all the others. The defendant has appealed from the judgment.

The facts found by the court are not subject to correction. They may be summarized as follows: On June 19, 1943, the plaintiffs, as owners of the Hotel Davenport in Stamford, leased it in writing to The Old Fashioned Hotels Corporation, the latter agreeing to conduct a hotel business on the premises. The term of the lease was to end on May 15, 1957. Shortly after its execution, the lease was assigned by The Old Fashioned Hotels Corporation to the defendant, with the plaintiffs' consent. The lease provided for a graduated basic rental plus a percentage of the lessee's gross receipts in excess of a stipulated amount. The defendant's net income from its operation of the hotel from 1946 to 1952, inclusive, averaged about $1400 annually.

The General Assembly of 1947 authorized the state fire marshal to establish a fire safety code. General Statutes, Sup. 1947, § 626i (Rev. 1949, § 3665). He was directed to set up regulations designed to provide reasonable safety from fire, smoke and panic in various types of buildings, including those used as hotels. Ibid. Pursuant to this grant of authority, the marshal prepared a state fire safety code. Following promulgation of the code on September 23, 1947, the local fire marshal made an inspection of the Hotel Davenport and, upon finding that it violated many provisions of the code, ordered seventeen items of work to be done to make the building conform to the

requirements relating to hotels.[1] The total expense for all of the work will reach $29,637. The installation of a sprinkler system will be the most expensive single item. It will cost $16,887.

The court held that the plaintiffs must assume

[1] The seventeen items ordered by the marshal are as follows:

"1. Second exit 48 inches wide must be provided from the ballroom and also from the dining room to the outside and must be carried to a street or a ground area of refuge.

"2. Properly lighted 'Exit' signs (4½ inch letters) must be provided.

"3. The automatic auxiliary illumination feeder must be extended back as far as possible.

"4. The panelling in the cocktail lounge must be removed or rendered fire-resistant.

"5. Inside rear stairway must be provided with a fire-resistant passageway to the outside.

"6. Seal and make fire-resistant all corridor or passageway transoms.

"7. Enclose or segregate with fire-resistant material the front and rear stairways. (This requires one new buck and door at each floor of the main stairway and three new bucks and doors at each floor of the rear stairway.)

"8. Similarly, all ventilation and pipe shafts must be provided with fire-resistant skylights, windows, and bucks.

"9. New elevator doors of closed or solid construction must be provided. (Wire glass panes cannot exceed 6 square feet.)

"10. Second handrail must be provided for main stairway.

"11. Door-closers must be provided for windows of ventilation and pipe shafts and stairways and passageways where not now provided.

"12. Doors and jambs, equally fire-resistant, must be provided where walls or partitions are required to be fire-resistant. Wire glass panes limited to 5 square feet.

"13. Panic hardware must be provided where egress doors lead to the outside.

"14. 'Not an Exit' signs must be provided where appropriate (4½ inch letters).

"15. 'All existing hotels constructed wholly or in part of combustible materials, which have sleeping accommodations for guests or employees above the third story, shall be completely protected by an approved system of automatic sprinklers.'

"16. Complete segregation of boiler room, ceiling, walls, etc., from rest of the building.

"17. Air vents must be provided to furnace room."

the expense of making three corrections (identified as 1, 5 and 16 in footnote 1) and that the defendant must pay for all the others. The ratio decidendi of the trier in determining this dichotomy of responsibility was that the provisions of the lease required the plaintiffs to bear the cost of all structural changes and the defendant the cost of the remaining items. The first matter for determination, then, is whether that construction was correct.

The lease is voluminous. It contains several articles which have a bearing on the matter now under discussion, although in the interest of brevity we mention but two, since they are decisive. In article 8(3), the lessee covenants "[t]o keep the interior and exterior of the demised building in adequate, proper and satisfactory repair at the expense of the Lessee, *provided the Lessee shall be under no obligation to make structural alterations or repairs . . . ."* The emphasis is ours and is made solely because of the significance of the words. Article 16 reads as follows: "The Lessee covenants, stipulates and agrees during the term of this lease [that] it will conduct on the demised premises a first class hotel at all times during the term of this lease . . . ; that it will not use said premises for any unlawful purpose and will keep and save the Lessors harmless from any penalties, damages, suits, fines, judgment or other charges imposed for any violation of any present or future . . . State or municipal law and will save and keep harmless the Lessors against and from any losses, suits, damages, judgments, costs and expenses arising out of the construction, erection, maintenance and repair of the demised building. . . . And it is further agreed between the parties hereunto, that the Lessee is to comply with, and to conform to all the laws of the State of Connecticut,

and the by-laws, rules and regulations of the City and Town of Stamford, relating to . . . fire . . . so far as the premises hereby leased are, or may be concerned; and to save the Lessors harmless from all fines, penalties and costs for violation of, or noncompliance with the same."

A lease is a contract. *Cohn* v. *Fennelly,* 138 Conn. 474, 476, 86 A.2d 183. In construing it, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Perkins* v. *Eagle Lock Co.,* 118 Conn. 658, 663, 174 A. 77. If the language is ambiguous, the construction which favors the lessee should be adopted. *Connecticut Land & Mortgage Co.* v. *Lesser,* 136 Conn. 580, 583, 72 A.2d 805. Furthermore, an unexpressed intent is of no significance. *Ziulkoski* v. *Barker,* 94 Conn. 491, 494, 109 A. 185. The controlling factor is the intent expressed in the lease, not the intent which the parties may have had or which the court believes they ought to have had. *Hansel* v. *Hartford-Connecticut Trust Co.,* 133 Conn. 181, 194, 49 A.2d 666; *Colonial Trust Co.* v. *Hilton, Inc.,* 111 Conn. 77, 83, 149 A. 513.

Article 8(3) is devoted to the covenant of the defendant concerning the work it was to perform upon the demised premises. As has previously been stated, the defendant agreed to keep the interior and exterior of the building in adequate, proper and satisfactory repair; and then, in order to limit the scope

of this agreement, the parties expressly excluded therefrom any obligation on the defendant's part "to make structural alterations or [structural] repairs." In one form or another, the word "repair" appears many times throughout the lease. In the use made of the word there is nothing to suggest that the parties employed it in any special or technical sense. Hence, the word must receive its ordinary meaning, namely, the restoration to a sound or good state after decay, dilapidation or injury. *Dorne* v. *Williams,* 140 Conn. 193, 200, 98 A.2d 796; Webster's New International Dictionary (2d Ed.). It does not mean to make something new but rather to refit or restore an existing thing. *Todd* v. *Inhabitants of Rowley,* 90 Mass. (8 Allen) 51, 58; *Wattles* v. *South Omaha Ice & Coal Co.,* 50 Neb. 251, 260, 69 N.W. 785. By the covenant set forth in article 8(3), then, the defendant agreed to do nothing more than to restore to its former condition any existing part of the exterior or interior of the building that had become imperfect, excluding such work as involved structural repairs or alterations. *Ten-Six Olive, Inc.* v. *Curby,* 208 F.2d 117, 122; *Friedman* v. *Le Noir,* 73 Ariz. 333, 336, 241 P.2d 779; *Woodbury Co.* v. *William Tackaberry Co.,* 166 Iowa 642, 646, 148 N.W. 639; Black's Law Dictionary (4th Ed.).

The plaintiffs contend, however, that the controlling agreements are to be found in article 16. They point to the covenants contained therein and maintain that the provisions of that article must determine upon which party rests the burden of bearing the expense of carrying out the orders of the fire marshal. We do not agree with this contention. Article 16 was not incorporated into the lease for the purpose of placing the obligation to pay for the work done on the building during the course of

the term. Article 8 had already met and settled that problem. Article 16 might well be labeled "the use article," since it deals merely with the use to be made of the premises and imposes upon the lessee certain burdens with respect to that use. Thus, the defendant agrees (1) to use the building as a hotel; (2) to refrain from using it for any unlawful purpose and to save the lessors harmless from penalties and the like arising out of a use contrary to a federal, state or municipal law; (3) to protect the lessors from liability to individuals sustaining injury to person or property because of the use made of the premises; and (4) to use the building in such a manner as to conform to, and comply with, existing and future state laws and the by-laws, rules and regulations of the town and city of Stamford, saving the lessors harmless from any fines, penalties and costs flowing out of a violation of such requirements. It is not article 16 but article 8 to which we must look for the vital and decisive provisions. The court was incorrect in its construction of the lease.

The court determined that the defendant should pay for carrying out those orders of the fire marshal which are identified as items 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 17 in footnote 1. So far as items 2, 13 and 14 are concerned, the defendant does not challenge the court's determination, and the judgment must stand in regard to them. The test for passing upon the validity of the court's ruling concerning the other eleven items is whether they involve something more than "repair," as we have defined that word. In the light of this test, the court erred in imposing upon the defendant the duty of paying for any of these items, since the lessee is not required to absorb the cost of creating something new.

There is error, the judgment is set aside and the case is remanded with direction to render judgment declaring that the defendant is to pay for items 2, 13 and 14, and the plaintiff is to pay for all the other items.

In this opinion the other judges concurred.