**In the Matter of STANLEY HOTEL, INC., Debtor.**

**Appeal of UNITED STATES of America, SMALL BUSINESS ADMINISTRATION, Frank J. Normali.**

**Civ. A. No. 81–K–984.**

United States District Court, D. Colorado.

Dec. 1, 1981.

Jimmye S. Warren, Asst. U. S. Atty., Denver, Colo., for the United States.

Charles E. Matheson, Fairfield & Woods, Denver, Colo., for Normali.

Steven L. Zimmerman, Denver, Colo., trustee for Stanley Hotel.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an appeal from an order of the bankruptcy court on, April 15, 1981, authorizing the trustee of the Stanley Hotel Inc., debtor in reorganization, to obtain a loan not in excess of $700,000 from Club Holiday Stanley Investment Group, [hereinafter "Club Holiday"], and grant to Club Holiday a senior and superior lien on the Stanley Hotel Property in Estes Park, Colorado. The order also provides that Club Holiday will forfeit their senior and superior lien status in the event that either no reorganization plan is confirmed or if Club Holiday defaults on its obligations under a purchase contract with the trustee entered into on February 18, 1981. For the following reasons, the bankruptcy court's order is affirmed.

A brief recitation of the events leading up to Bankruptcy Judge Moore's April 15, 1981 order is necessary for an understanding of this case. In August, 1979, appellant Frank J. Normali obtained a deed of trust on the Stanley Hotel to secure certain obligations owed to Normali by affiliates of the Stanley Hotel, Inc. Since these obligations were not paid, Normali commenced proceedings to foreclose his deed of trust. Ultimately the foreclosure proceedings went to sale and on February 20, 1980, at the public trustee's sale, Normali bid in the property and was issued a certificate of purchase from the public trustee. In accordance with Colorado law, Stanley Hotel, Inc., as the owner of the Stanley Hotel, had 75 days following the sale in which to redeem the property from foreclosure. In the event that the debtor

failed to redeem by the end of the redemption period, a deed to the Stanley would issue to Normali.

On May 5, 1980, the last day of the redemption period, the debtor filed a chapter XI petition in bankruptcy and the trustee in bankruptcy immediately sought a preliminary injunction to restrain issuance of the public trustee's deed because the deed would eliminate the major asset of the debtor from the bankruptcy estate and thereby make any intended plan of reorganization impossible. The bankruptcy court issued a temporary restraining order holding matters in abeyance until July 8, 1980. In an effort to resolve matters without subjecting the parties to litigation, the trustee commenced negotiations, eventually resulting in a settlement agreement on July 29, 1980. The bankruptcy court approved this settlement agreement after a hearing.

Under the terms of the settlement agreement, the proceedings against Normali were dismissed and a public trustee's deed was issued and deposited into an escrow account. The trustee had the right to redeem the deed from escrow by paying the escrow agent the specified redemption price of $482,803.57 by December 31, 1980. The trustee was also given the right to extend the redemption date to April 15, 1981 by paying to the escrow agent the sum of $20,000 by January 12, 1981, and the right to further extend the redemption date by paying a $50,000 extension fee by April 15, 1981. This agreement also provided that if the trustee failed to make any of the payments, his rights thereunder would terminate and the deed to the Stanley Hotel property would issue to Normali.

Pending termination of the escrow by issuance of the deed to either the trustee or Normali, the trustee was granted the right to remain in possession and control of the Stanley and its ownership save and except any right to sell, transfer or encumber the property except to encumber the property to obtain funds to redeem pursuant to paragraph 1 of the settlement agreement. (Settlement agreement ¶ 2.)

After the trustee paid to Normali the necessary funds to extend the redemption period to April 15, 1981, Normali moved the bankruptcy court for an order releasing the Stanley property to him alleging that the trustee had breached certain terms of the settlement agreement. On April 1, 1981 the bankruptcy court rendered its decision denying Normali's petition.

Immediately after the April 1, 1981 decision, the trustee and Club Holiday filed their joint application and notice to interested parties requesting the authority to grant the previously mentioned senior lien to Club Holiday to secure a $700,000 loan, in order to meet the April 15, 1981 extension fee deadline of the settlement agreement. Club Holiday had previously entered into an agreement with the trustee on February 18, 1981, to purchase the Stanley Hotel for the lesser of $3,500,000 or the amount finally determined to be due and allowed for all claims in the chapter XI proceeding. After a hearing in bankruptcy court on April 14, 1981, Bankruptcy Judge Moore granted the joint application authorizing the senior lien to Club Holiday.

Frank Normali and the Small Business Administration, as creditors of Stanley Hotel, Inc., appeal the bankruptcy judge's findings, claiming that the debtor could have obtained credit elsewhere without the senior lien and that their interests and the interests of Stanley Hotel, Inc.'s creditors are not adequately protected. Normali further claims that the senior lien violates the settlement agreement and that the April 14, 1981 hearing on the proposed senior lien did not provide him adequate notice and therefore violated his due process rights.

Bankruptcy Rule 810 requires that the bankruptcy judge's findings be upheld unless they are "clearly erroneous." "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Accord United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1967). Unless there is the most cogent

evidence of mistake or miscarriage of justice, the district court should not disturb the findings of the bankruptcy judge. *See McDowell v. John Deere Industrial Equipment,* 461 F.2d 48, 50 (6th Cir. 1972). Taking these considerations into account, I affirm the bankruptcy judge's order.

11 U.S.C. § 364(d) provides that:

(1) The court after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) The trustee is unable to obtain credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

First, the bankruptcy judge's finding that the trustee could not obtain credit elsewhere, pursuant to § 364(d)(1)(A), is not clearly erroneous and is supported by substantial evidence. In reaching his decision, Bankruptcy Judge Moore noted that both the Colorado National Bank and the American National Bank refused to grant unsecured loans to the trustee.

Further, the appellants' claim that the trustee could have obtained credit elsewhere, since Club Holiday granted the trustee a $50,000 unsecured loan in conjunction with the purchase agreement of February 18, 1981, is without merit. It is unclear whether the parties understood that the $50,000 advanced to the trustee by Club Holiday would be unsecured; the purchase agreement specifically provided that the trustee would use "all reasonable efforts" to obtain super priority lien status for this amount. (Purchase agreement p. 15.) Moreover, the mere fact that the trustee may have been able to obtain a $50,000 unsecured loan does not indicate that he could have obtained the $700,000 amount at issue without granting a senior lien.[1]

Second, the bankruptcy judge's determination that the appellants' interests are adequately protected, notwithstanding the issuance of a senior and superior lien, is also supported by substantial evidence. The term "adequate protection" is not clearly defined in the bankruptcy code. 11 U.S.C. § 361 enumerates three non-exclusive examples of how adequate protection, as required under §§ 362, 363 and 364, may be provided:

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Section 361(3) has been recognized as a "catch all" provision giving the parties and the courts

... flexibility by allowing such other relief as will result in the realization by the protected entity of the value[2] of its interest in the property involved. Under this provision, the courts will be able to adapt to new methods of financing and to formulate protection that is appropriate to the case if none of the other methods would accomplish the desired result.

---

1. The appellants also claim that, in any event, all that the trustee needed was a $50,000 loan in order to pay the extension fee and not the full $700,000. However, the authorization for the entire amount due to Normali was essential to the formation of a reorganization plan, which by the terms of the Normali settlement agreement, was due the day after the April 14, 1981 hearing. (Settlement agreement p. 3.)

2. In the final version of § 361(3), the term "value" was changed to "indubitable equivalent."

House Report No. 95–595, 95th Cong. 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. This section requires that creditors receive the indubitable equivalent of their interests, which permits courts to find adequate protection when there is a sufficient equity cushion in the property involved. *See In Re Rogers Development Corp. and Beaverdam*, 5 B.C.D. 1392, 1 C.B.C. 499, 505, 2 B.R. 679, (B.Ct.E.D.Va. 1980), *Collier on Bankruptcy*, 15th Ed. § 361.02(3), P. 361–9, *cf. In Re Blazon Flexible Flyer Inc.*, 407 F.Supp. 861, 864–65 (N.D.Ohio 1976).

In holding that the creditors were adequately protected, Bankruptcy Judge Moore recognized that there was a sufficient equity cushion "based upon the finding of valuation of the property and secured loans." *See* April 15, 1981 bankruptcy court order, p. 3.

The total of valid liens against the property is approximately $2,500,000[3] and the market value is somewhere between the 3.5 million dollar purchase price of the Club Holiday purchase agreement and the 2.6 million dollar formal appraisal. While these figures do not present a substantial equity margin for the creditors, the bankruptcy court's finding of adequate creditor protection based upon these figures is not clearly erroneous.

Moreover, the bankruptcy court's order, authorizing the senior lien to Club Holiday, provides additional safeguards to the other creditors. The order provides that Club Holiday will waive senior lien status in the event no plan of reorganization is confirmed or if Club Holiday defaults on the purchase contract either before or after an order of confirmation. If Club Holiday defaults or if no plan of reorganization is confirmed, Club Holiday will lose its priority and the other creditors will be restored

to their original lien status. If Club Holiday satisfies its obligations to pay for the Stanley, the creditors will be paid. Therefore, the creditors will either be paid or restored to their original priorities.

The appellant Frank Normali raises additional challenges to the bankruptcy court's order. First, Normali claims that the trustee's authority to encumber the Stanley property is limited by the settlement agreement which does not authorize the senior lien granted to Club Holiday. However, paragraph 2 of the settlement agreement specifically provides that the trustee may encumber the subject property for the purposes delineated in paragraph 1, which includes as a purpose the making of payments to extend time in which the trustee may acquire deeds from escrow. The bankruptcy court recognized these provisions and correctly concluded that the settlement agreement expressly permitted the intended encumbrance. April 15, 1981 bankruptcy court order p. 1.

Next, Normali argues that he is denied adequate protection of his interest in the property because authorizing a senior lien to secure the $50,000 used to pay Normali for an extension fee creates the possibility that in the event of default by the trustee under the settlement agreement, Normali will take title subject to the $50,000 encumbrance. However, as previously mentioned, Normali has given written authorization for this type of encumbrance in the settlement agreement. Accordingly, he has waived any right he may have had to object to the adequacy of his creditor protection resulting from this lien.[4]

■ Finally, Normali claims that his due process rights were violated since he received inadequate notice of the April 14,

---

**3.** The total lien figure is $2,741,725.07 but the trustee disputes the validity of $257,943.18 of these liens.

**4.** Similarly, Normali's claim, raised solely in his reply brief, that the trustee lacked sufficient interest in the property to grant an encumbrance after expiration of the redemption period, is without merit in light of the settlement

agreement. Under the settlement agreement, Normali agreed that the public trustee's deed would issue into escrow and that the trustee would remain in possession and control of the property, with the full right to exercise all of the attributes of ownership, except the right to sell or encumber except as provided for in paragraph 1 of the settlement agreement.

1981 hearing. The Supreme Court has recognized that the kind of procedure that is due is that which is suitable and proper to the nature of the case. *See Ex Parte Wall,* 107 U.S. 265, 289, 2 S.Ct. 569, 589, 27 L.Ed. 552 (1883). In the bankruptcy context, 11 U.S.C. § 102(1)(A) defines notice as notice that "is appropriate in the particular circumstances." Rule 24 of the Local Rules of Bankruptcy Procedure, United States Bankruptcy Court for the District of Colorado, also allows for flexibility in notice requirements when "necessary to meet emergencies or to avoid injustice and great hardship."

In the instant case, there was a necessity for court action prior to April 15, 1981 since the settlement agreement specifically required that the trustee pay Normali the $50,000 extension fee and file a plan of reorganization by April 15, 1981. Although, as Normali contends, the trustee knew for several months that action by the bankruptcy court on this matter would be necessary prior to that date, the trustee's delay in filing for a hearing was largely necessitated by Normali's attempt to obtain immediate possession of the Stanley property. After the bankruptcy court denied Normali's petition seeking the Stanley on April 1, 1981, the trustee and Club Holiday promptly filed their joint application and notice which the bankruptcy court set for hearing on April 14, 1981. I hold that this notice was adequate under the circumstances of this case and therefore not violative of due process nor the bankruptcy code's or local rules' notice provisions.

For the reasons stated herein, it is hereby

ORDERED that the bankruptcy court's order is affirmed.