In re Richard PICKUS and Regina
Pickus, Debtors.

Richard PICKUS, et ux., Appellants,

v.

Dominic VITAGLIANO, et ux., Appellees.

Civ. No. H–81–174.

United States District Court,
D. Connecticut.

April 20, 1982.

Francis X. Dineen, New Haven, Conn.,
for debtors-appellants.

Stephen Ketaineck, West Haven, Conn.,
for appellees.

## RULING ON APPEAL FROM BANKRUPTCY COURT

CLARIE, Chief Judge.

This appeal from the Bankruptcy Court comes to the District Court for review pursuant to 28 U.S.C. § 1334. It has been once previously remanded to the Bankruptcy Court for specific findings on certain limited issues. The plaintiffs brought this suit when, one day after they had filed under Chapter 7 of the Bankruptcy Reform Act and had received an automatic statutory stay of proceedings under 11 U.S.C. § 362(a), they were evicted from their apartment by the defendant landlords. The defendants had previously obtained a summary process judgment against the plaintiffs for nonpayment of rent.

The plaintiffs charged that the defendants' actions had violated not only the auto-

matic stay provisions of the aforesaid statute, but also constituted unlawful collection procedures and the use of unfair trade practices under Connecticut law and had thereby violated the plaintiffs' constitutional rights under 42 U.S.C. § 1983. The plaintiffs further contended that the defendant landlords had violated Conn.Gen.Stat. § 47a–21(d) by their failure to return the tenants' security deposit at the termination of the lease.

The Bankruptcy Judge found in favor of the plaintiffs solely on the security deposit issue and for the defendants on all remaining issues. 8 B.R. 114. The plaintiffs thereupon appealed to this Court. The case was remanded to the Bankruptcy Judge for a determination of whether or not a letter sent to the plaintiffs by the landlords' authorized real estate renting agent one month prior to the eviction constituted a renewal of the lease. The Bankruptcy Court found that it did not, and the plaintiffs renewed their appeal here. Upon reviewing the record, the Court finds that the agent's letter constituted a renewal of the lease as a matter of law. Accordingly, the Court holds that the eviction was unlawful under Connecticut's summary process statute, Conn.Gen.Stat. § 47a–23 *et seq.*, and hereby orders a hearing on the issue of damages.

### Facts

The factual setting of this case is quite complex and must be set out in some detail. On October 30, 1979, the defendants' counsel served a summary process notice to quit possession upon the plaintiffs for nonpayment of rent. At that time the plaintiffs were in the second month of a one-year lease, which had been extended from the previous rental year. Abode service of the summary process complaint was made on November 21, 1979.

On November 29, 1979, the plaintiffs met with the attorney for the defendants in the latter's office, and they were told that they would not be evicted from the apartment if they made up the arrearages in rent and paid attorney's fees as provided in the lease.

The plaintiffs were further orally informed that their rental payments would be for "use and occupancy" only until they became current in their rent, and that the pending eviction in the summary process action would serve as "a sword of Damocles" over their heads to insure the repayment of the rent. In the hearing before the Bankruptcy Judge, the plaintiffs testified that they were unable to remember the exact details of this arrangement, but did recall knowing that the summary process action would not be withdrawn until their rent had been paid in full.

This relationship between the parties persisted until the plaintiffs received a letter in June of 1980 from the renting agent of the defendants offering to extend their lease, effective September 1, 1980, for an additional year. At no time during this period did the plaintiffs become current in their rent. In fact, after not receiving any payments during the months of December and January, the attorney for the defendants on February 5, 1980 filed a motion for default for failure to appear and for judgment of possession in the summary process action. On February 7, 1980, the state court entered the judgment of possession, a copy of which was sent to the plaintiffs. The execution on the judgment was issued on February 14, 1980. The state court issued additional executions on the summary process judgment on May 9, 1980 and July 17, 1980. In June of 1980, however, the plaintiffs received the following letter:

"Dominick & Elena Vitagliano
Box A
Orange, CT 06477
                                        Tel. 795–3748

Dear Mr. Pickus

Under the terms of your lease which expires on August 31, 1980, you may hold over beyond that date for one year, but with the following change of terms.

Unfortunately, due to the increases in taxes, costs of utilities, and costs of maintenance, we are unable to retain your monthly rental at the present level. Please be advised that in the event that you retain these premises and continue to

operate under the lease, the terms of the lease shall be in every way identical to the present lease except that the monthly rental will now be $300.00 for the next year.

I am sure that you are aware that in the event that you desire to terminate this lease, you are required to provide us with sixty (60) days written notice of your intention to vacate upon the expiration of the lease.

In the event that we do not receive this written notice, we must assume that you do intend to stay for another year under the new terms. Your failure to notify us, therefore, acts as an agreement to the new terms of your lease.

Very truly yours,
J. Hickerson
Off Mgr."

(Plaintiffs' Exhibit 11.)

Notwithstanding this letter, the defendants sought and obtained the third execution on the summary process judgment and on July 23, 1980 evicted the plaintiffs from their apartment. The parties stipulated that the plaintiffs still owed $450.00 at the time of the eviction. The plaintiffs made their last payment, which they claim was "rent" for June, 1980, on July 3, 1980. It is uncontested that the plaintiffs had filed for bankruptcy on July 22, 1980 under Chapter 7 of the Bankruptcy Reform Act and had obtained an automatic stay under 11 U.S.C. § 362(a) one day prior to their eviction.

### Discussion of the Law

■ The statutory grant of appellate jurisdiction to the District Court over decisions of the Bankruptcy Court is contained in 28 U.S.C. § 1334. That section provides:

"§ 1334. Bankruptcy appeals

(a) The district courts for districts for which panels have not been ordered appointed under section 160 of this title shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts."

The standard of review of decisions of the Bankruptcy Court is set out in Rule 810 of the Rules of Bankruptcy Procedure which provides:

"Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. *The court shall accept the referee's findings of fact unless they are clearly erroneous,* and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses." (Emphasis added).

Rule 810 requires that the same effect be given to the referee's findings of fact as that required by Fed.R.Civ.P. 52(a). *Gross v. Fidelity & Deposit Company of Maryland,* 302 F.2d 338, 339 (8th Cir.1962); *Simon v. Agar,* 299 F.2d 853 (2d Cir.1962). Rule 810 does not, however, prevent the District Court from reviewing the legal conclusions of the Bankruptcy Court. Thus in *Prudential Credit Services v. Hill,* 14 B.R. 249 (D.C.S.D.Miss.1981), the court noted that "[t]he district court must independently determine the accuracy of the ultimate legal conclusions adopted by the bankruptcy judge on the basis of the facts shown." *Id.* at 251. Similarly, in *Espiefs v. Settle,* 14 B.R. 280 (Bkrtcy.D.N.H.1981), the court observed that "while [the court] is bound to accept the bankruptcy judge's findings of fact unless they are clearly erroneous, the clearly erroneous rule does not apply to questions of law or to mixed questions of fact and law. The court in this action makes an independent determination of the law." *Id.* at 283. *See also In re Wingfield,* 15 B.R. 647, 649–50 (D.C.W.D.Okl.1981); *Matter of Stanley Hotel, Inc.,* 15 B.R. 660, 662–63 (D.C.D.Colo.1981).

■ Turning to the legal consequences of the June, 1980 letter, the Court notes at the outset that summary process may not be instituted unless there has been a termination of a lease. The statute provides in pertinent part:

"§ 47a–23. Notice to quit possession of premises. Form. Service.

(a) *When a rental agreement or lease* of any land or building or of any apartment in any building, ... whether in writing or by parol, *terminates* by lapse of time,

174

or by reason of any expressed stipulation therein, . . . *or where one originally had the right or privilege to occupy such premises but such right or privilege has terminated,* and the owner or lessor, or his legal representatives, or his attorney-at-law, or in-fact, desires to obtain possession or occupancy of the same, . . . he or they shall give notice to the lessee or occupant to quit possession of such land, building, apartment or dwelling unit, at least eight days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy." (Emphasis added).

Although the lease at issue in this case had at one time terminated for nonpayment of rent, the Court finds that the letter sent by the renting agent to the plaintiffs constituted an offer to renew the lease which was accepted by the plaintiffs' failure to notify the defendants within 60 days of August 31, 1980 that they did not intend to remain as tenants for an additional year. In reaching this conclusion, the Court is mindful of the general rule with respect to the construction of leases which was set out as follows in *Ingalls v. Roger Smith Hotels Corporation,* 143 Conn. 1, 118 A.2d 463 (1955):

" 'A lease is a contract. *Cohn v. Fennelly,* 138 Conn. 474, 476, 86 A.2d 183. In construing it, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Perkins v. Eagle Lock Co.,* 118 Conn. 658, 663, 174 A. 77. If the language is ambiguous, the construction which favors the lessee should be adopted. *Connecticut Land & Mortgage Co. v. Lesser,* 136 Conn. 580, 583, 72 A.2d 805. Furthermore, an unexpressed intent is of

no significance. *Ziulkoski v. Barker,* 94 Conn. 491, 494, 109 A. 185. The controlling factor is the intent expressed in the lease, not the intent which the parties may have had or which the court believes they ought to have had. *Hansel v. Hartford-Connecticut Trust Co.,* 133 Conn. 181, 194, 49 A.2d 666; *Colonial Trust Co. v. Hilton, Inc.,* 111 Conn. 77, 83, 149 A. 513.' " *Id.* at 6, 118 A.2d 463.

The intention of the defendants, as expressed in the rental agent's renewal letter, was clear. The defendants' agent offered to renew the lease for an additional year commencing on September 1, 1980 at an increased rent of $300.00 per month. The letter further stipulated that if the plaintiffs failed to notify the renting agent two months prior to August 31, 1980, of their desire to terminate the lease, the lease would be treated as renewed under the new terms. The letter stated in this regard:

"In the event that we do not receive this written notice, we must assume that you do intend to stay for another year under the new terms. Your failure to notify us, therefore, acts as an agreement to the new terms of your lease."

The sixty days prior notice period expired on July 3, 1980. It is clear from the record in this case that the plaintiffs had not notified the defendants or the rental agent as of this date of their intention not to renew the lease. Indeed, the plaintiffs testified that after receiving the letter, they viewed the lease as renewed. Accordingly, the Court finds that the lease was renewed as of July 3, 1980, for a one-year term commencing on September 1, 1980. This renewal impliedly permitted the plaintiffs to hold over under the then existing renting arrangement between the parties until the commencement of the new lease term. The eviction of the plaintiffs on July 23, 1980 was therefore unlawful.

■ This construction is not altered by construing the language of the lease "in the light of the circumstances surrounding the parties at the execution of the instrument." *Ingalls, supra.* As noted above, the parties

stipulated that at the time of the eviction, the balance of back rent owed totalled only $450.00. It is therefore reasonable to view the circumstances surrounding the sending of the rental agent's letter as indicative of the defendants' intention to relet the apartment to tenants who, over a period of several months, had progressively made up arrearages in rent. To the extent that the circumstances surrounding the letter were ambiguous, the language of the letter was not and, at any rate, under *Ingalls* all ambiguities are to be resolved in favor of the lessee.

Similarly, the fact that the plaintiffs never expressly accepted the offer to renew is of no legal significance. As noted by the court in *Data General Corp. v. Citizens National Bank,* 502 F.Supp. 776 (D.Conn.1980):

"Acceptance of an offer need not be express but may be shown by any words or acts which indicate the offeree's assent to the proposed bargain. *Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co.,* 159 Conn. 242, 246, 268 A.2d 391 (1970); *Beech Aircraft Corp. v. Flexible Tubing Corp.,* 270 F.Supp. 548, 558–59 (D.Conn.1967). Likewise, under certain circumstances, where the offeree fails to reply to the offer, the offeree's silence and inaction may constitute an implied acceptance. *Shulman v. Hartford Public Library,* 119 Conn. 428, 433, 177 A. 269 (1933)."

In the present case, the plaintiffs accepted in a manner contemplated by the offer itself, namely, by not giving notice of their intention not to renew at least sixty days in advance of August 31, 1980. The Court accordingly finds that the lease had been renewed for an additional year, and that the eviction was therefore unlawful. The decision of the Bankruptcy Court is affirmed in all other respects. A hearing will be scheduled forthwith on the issue of damages.

SO ORDERED.