[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are the owners of property known as 2000 Boston Post Road in Westbrook (the "premises"). On or about November 8, 1983, the plaintiffs leased the premises for a five-year term to the defendant Seaview Subaru Inc. ("Seaview"). The defendant Michael Ferranti personally guaranteed all of the lease obligations of Seaview to the plaintiffs. Beginning in November, 1987, Seaview sublet the premises to Harbor Motors, Inc. ("Harbor") with the written consent of the plaintiffs. Seaview and Ferranti remained liable for all obligations under the primary lease despite the existence of the sublease.
Harbor vacated the premises on or about June 19, 1989. The plaintiffs brought this suit against Seaview, Ferranti and Hugh Fiore, Jr., the guarantor of the sublease, claiming that the plaintiffs are owed $2000.00 for the balance of the rent for the month of June and that the defendants are liable under the terms of the lease and sublease for certain repairs and restoration to the premises. The defendant Seaview Subaru was defaulted for failure to appear in this action and all evidence presented was submitted as a hearing in damages against that defendant.
Early in 1989, while Harbor was in possession of the premises pursuant to the sublease, both the original lease and the sublease expired. Harbor and the plaintiffs then agreed to an oral, month-to-month lease on the same terms as the written lease. In May, 1989, Harbor paid the plaintiffs $500.00 of the $4000.00 monthly rent and asked the plaintiffs to apply the $3500.00 security deposit to the balance due. Harbor hoped to vacate the premises by the end of May, but was delayed in its move. Anticipating an actual move out date of mid-June, Harbor paid the plaintiffs $2000.00 early in June for half a month's rent. The plaintiffs seek judgment for the remaining $2000.00 from Seaview, Ferranti and Fiore. The plaintiffs have not, however, made a claim against Harbor, the party who would be liable for the rent balance for the month of June. Harbor is sued in this action only on a third-party complaint filed by Ferranti. Neither Seaview nor Ferranti or Fiore are liable for the $2000.00 balance of June rent. CT Page 6736
Although Seaview remained liable for all obligations under the primary lease after the sublease to Harbor, the plaintiffs' claim for the balance of rent for the month of June is not a claim under the written five-year lease. The claim arises from an oral month-to-month lease between the plaintiffs and Harbor, which was made after the written lease had expired. Neither Seaview nor Ferranti, the guarantor under the written Seaview lease, have any liability for the oral lease agreement between the plaintiffs and Harbor.
The plaintiffs' claim against Hugh Fiore, Jr. for the balance of June rent is likewise without merit. Insofar as plaintiffs' claim that Fiore is liable for the June, 1989 rent because he was one of the tenants under the written sublease and the month-to-month rental was on the same terms and conditions as the sublease, the court finds that Fiore was not a tenant under the written sublease. Although the sublease recites on the first page that both Fiore and Harbor were the subtenants, the lease was not executed by Fiore personally as a tenant. As the corporate acknowledgement makes clear, Fiore signed the lease as president of Harbor. Fiore did sign the sublease as a guarantor, but that guaranty ran only "to the sublessor," that is, to Seaview, not to the plaintiffs. There was no testimony that the plaintiffs procured any verbal or written guaranty from Fiore of the month-to-month lease with Harbor. Such a guaranty would have to be in writing, in any event, in order to be enforceable. Conn. Gen. Stat. 52-550 (a)(2). The plaintiffs have failed to establish the personal liability of Fiore for the balance of the June rent.
The plaintiffs' remaining claims are for damages to repair or restore the premises. Two of the plaintiffs' largest claims are for the replacement of two items which were allegedly provided at the premises at the outset of the Seaview lease, but were allegedly missing when Harbor vacated. The plaintiff Charles Lyon testified that the premises included a security alarm system at the beginning of the Seaview lease, but that the entire system was found to be missing after Harbor vacated. He seeks judgment for the cost of a new system.
The defendant Seaview acknowledged that the premises did contain a security alarm system, but asserted that the system remained on the premises after Harbor vacated in June 1989 and was still at the premises at the time of trial. To confirm the testimony, two photographs were offered and admitted into evidence allegedly showing the burglar alarm system switch box in its customary place in the bathroom wall. The photographs were taken during the course of the trial.
The plaintiffs, who had never identified in their direct testimony which components of the alarm system were allegedly CT Page 6737 missing, failed to rebut or respond to this testimony or the photographs. The court finds for the defendants on this claim.
The plaintiffs also claim that the premises included an air compressor in 1983 at the beginning of the Seaview lease and that the compressor was missing after Harbor vacated. Mr. Lyon testified that he had purchased the compressor in 1972 or 1973. The lease, drafted by the plaintiffs' attorney, does not refer to the compressor.
The defendants presented testimony that an earlier tenant of Mr. Lyon, Bob Sharp, had purchased Mr. Lyon's compressor in the late 1970's. Harbor did remove an air compressor from the premises in June, 1989, but it was a compressor which Harbor purchased from Seaview. Harbor presented photographs and a tracing which showed that the compressor which Harbor removed from the premises was manufactured in 1983 and therefore could not be the compressor to which Mr. Lyon referred. The plaintiffs did not rebut any of this evidence. The court finds for the defendants on this claim.
The plaintiffs' remaining claims are for the cost of repairs. The plaintiffs claim that the defendants are liable for the repairs under the terms of the lease and the sublease. The lease with Seaview, guaranteed by Ferranti, contains the following pertinent provisions with respect to repairs:
 11. Maintenance and Repair: Tenant shall maintain and repair during the term of this Lease at its own cost all normal repairs necessitated by normal wear and use or damage to the premises; excluding capital improvements. The cost of capital improvements to existing structures shall be the obligation of the Landlord. During the term of this lease, Tenant shall further make, at its own cost and expense, all repairs and replacements required to keep the electrical, heating, ventilating and air conditioning and plumbing systems in good order and repair. . .
 12. Maintenance of Parking Areas: During the terms of this lease Tenant agrees to maintain and repair the surface of the parking areas and driveways, and agrees to maintain the shrubbery, grass areas and all amenities in and around the demised premises. . . .
(emphasis added)
After Harbor vacated, the plaintiffs had a new drywell CT Page 6738 installed at the premises at a cost of $2080.00. The old drywell was clogged and was impairing the function of the septic system at the premises. The plaintiffs claim this is a repair for which the defendants are responsible and defendants claim it is a capital improvement for which the plaintiffs are responsible.
When construing a lease, courts are to be guided by three principles. First, the intention of the parties is controlling and is to be determined from the language of the lease. Secondly, language is to be given its ordinary meaning and thirdly, the lease should be construed as a whole. Ingalls v. Roger Smith Hotels Corporation, 143 Conn. 1, 6 (1955). In construing the word "repair," the Supreme Court has found that it means a restoration to a sound or good state after decay, dilapidation or injury. It further found that a repair did not mean to make something new but instead to ref it or restore an existing thing. Id., 7.
The drywell was a major component of the septic system for the premises. The installation of the new drywell was not a "normal repair necessitated by normal wear and use." A reasonable construction of paragraph 11 is that Seaview was to be responsible for ordinary repairs made necessary by Seaview's use of the premises. Testimony was presented, however, and not effectively rebutted by the plaintiffs, that there had been problems with the septic system as far back as the late 1970's. Under these circumstances, the installation of a new drywell was not a normal or ordinary repair. In addition, the installation of the drywell made the septic system virtually new and therefore it was not a repair as defined in Ingalls. The plaintiffs are not entitled to recover the cost of the new drywell.
The next major repair claimed by the plaintiffs was the re-paving of the asphalt at the rear of the premises at a cost of $3000.00. Under paragraph 12 of the lease, Seaview was obligated to maintain and repair the surface of the parking areas and driveways. After Harbor vacated, the plaintiffs had a substantial portion of the driveway and parking area at the rear of the premises re-paved for two reasons. First, portions of the asphalt had eroded and had not been repaired and secondly, the location of the new drywell was under a portion of the asphalt, which therefore had to be replaced after the new drywell was installed. The total bill was $3000.00, and Mr. Lyon testified that he could not break down the bill between the work done in connection with the drywell and the balance of the work. The defendants cannot be held liable for the entire bill because a portion of it is attributable to the drywell, for which defendants are not responsible. The court has no alternative but to find for the defendants on this claim. The same result applies for the cost of driveway sealer purchased by the plaintiffs. CT Page 6739
The next expense claimed by the plaintiffs is a total of $1205.96 for painting the trim and the exterior of one of the two buildings on the premises. Photographs admitted into evidence clearly showed flaking paint on the trim around the windows and on the corners of the building. Application of paint is a "normal repair necessitated by normal wear and use" and Seaview and Ferranti should be liable for repainting, the trim to return it to the good condition it was in at the outset of the lease. However, the expense claimed includes not just the trim painting but the painting of the entire exterior of the building. No testimony was offered as to the necessity of painting the entire exterior and the photographs appear to show the exterior in generally good condition, in contrast to the trim. Because the painting expense is not allocated between the trim and the general exterior of the building, damages cannot be awarded for painting.
The plaintiffs also claim $2243.90 for replacement of gutters and leaders and three metal doors in both the showroom building and the garage. Photographs showed the gutters and leaders and the doors to be dented, scratched, scraped and generally damaged. The court credits Mr. Lyon's testimony that all of these items were in very good shape at the beginning of the Seaview lease, but they were in disrepair after the lease expired and Harbor vacated. These repairs are Seaview's responsibility under the lease because they are normal repairs, necessitated by normal wear and use or damage to the premises. Seaview and Ferranti as guarantor are liable to the plaintiffs for $2243.90.
The plaintiffs also incurred an expense of $707.74 to replace large panes of cracked glass in the showroom windows. The court again accepts Mr. Lyon's testimony that t, he windows were not cracked in 1983, but were in that condition after the Seaview lease expired. Seaview and Ferranti are liable for the cost of replacing the glass as a normal repair necessitated by damage to the premises. Because the only way to repair glass is to replace it, the court does not consider this expense a capital improvement.
The final expenses claimed by the plaintiff in their pleadings are $150.00 to replace a rotted window frame, $125.00 to pump out the waste oil tank, $60.00 to replace outside coach lamps which could not be repaired, and $15.00 to replace one prism missing from the office ceiling. A review of the court's notes and the exhibits shows that no evidence was presented concerning the window frame or the expense of pumping out the waste oil tank and plaintiffs therefore cannot recover these expenses. The plaintiffs are awarded the $75.00 for the coach lamps and the prism.
The defendants Seaview and Ferranti are liable to the CT Page 6740 plaintiffs for a total of $3026.64 for repairs. The plaintiffs seek judgment against Fiore for all the same repairs. The complaint alleges that Fiore was the tenant under the sublease. The court has found that Harbor, and not Fiore, was the tenant under the sublease and that Fiore, as guarantor of the sublease, executed a guaranty in favor of Seaview only. Moreover, even if Fiore were the tenant under the sublease, it is not clear what cause of action the plaintiffs would have, against Fiore. Although plaintiffs have made allegations of a breach of the sublease, they were not parties to the sublease and are not entitled to enforce it. They merely signed "Approved" on the sublease because their approval of any sublease was required under paragraph 8 of the Seaview lease. The plaintiffs did not allege, or prove, that they were third party beneficiaries of the sublease. On the state of the pleadings, the plaintiffs would have no claim against any subtenant.
The plaintiffs also seek judgment for $17,237.80 in attorneys' fees incurred by them in connection with this lawsuit. Paragraph 20 of the Seaview lease provides that if "either party hereto successfully enforces the provisions of this lease by legal action or through the services of an attorney, the other party shall pay the fees of the successful party's attorney. . . ." The plaintiffs seek an award of attorneys' fees pursuant to this paragraph of the lease, not pursuant to any statute which provides for an award of attorneys' fees.
Although the terms of paragraph 20 do not expressly provide for the recovery of the "reasonable" attorneys' fees of the prevailing party, the court will not award attorneys' fees in an amount which is not found to be reasonable. In determining the reasonableness of the attorneys' fees claimed, at least two factors must be considered. First is the extent to which the prevailing party has succeeded. Consideration of this factor is consistent with the terms of the lease, which conditions the recovery of attorneys' fees on success in the litigation. The second consideration is the time spent by the attorneys on the matter.
With respect to success in this litigation, the plaintiffs sought an award of $15,715.09 for repairs to the premises plus the $2000.00 for the balance of rent for the month of June. The rent was not awarded and only $3026.64 in damages was awarded. With respect to the time spent on this matter by plaintiffs' counsel, the presentation of the plaintiffs' case in chief was unduly protracted. Much of the testimony presented was repetitious. After considering both factors, the court finds that $2500.00 is a reasonable attorneys' fee to be awarded to the plaintiffs.
The defendant Michael Ferranti filed a third-party complaint CT Page 6741 for indemnification against Harbor and a cross-complaint against Fiore, alleging that Fiore and Harbor were in exclusive control of the premises and were obligated to maintain the same under the sublease. Ferranti called no witnesses in support of his claims against Harbor and Fiore, relying instead on seven pages of deposition testimony which were put into evidence. Fiore testified at his deposition, without elaboration, that when Harbor moved into the premises pursuant to the sublease, the premises required only "minor" repairs. Ferranti testified at his deposition that when Seaview moved into the premises in 1983, they "looked great" and that Seaview maintained the property that way.
This testimony is not sufficient to sustain Ferranti's burden of proving that the damage to the gutters, leaders and metal doors, the cracked glass and the coach lamps and prism all occurred during Harbor's possession of the premises. Perhaps these were the "minor repairs" to which Fiore was referring in his testimony. Moreover, Fiore testified at trial that the gutters were already damaged when Harbor took possession of the premises, thus disputing Harbor's liability for these repairs. (Even if Ferranti has sustained his burden, the court could not enter judgment against Fiore on the cross-complaint because it contains no demand for relief.)
Ferranti also filed a counterclaim against the plaintiffs seeking judgment for $3500.00 for a security deposit. Ferranti did not brief this claim and presented no evidence on this point. Ferranti is not the tenant, but the guarantor. It appears that Harbor had a $3500.00 security deposit which was used as partial payment for the May 1989 rent. The court finds against Ferranti on the counterclaim.
The last "claim" to be decided is the request of Harbor and Fiore and Ferranti for an award of attorneys' fees against the plaintiffs. Counsel for these parties made a verbal request to the court near the close of trial for such an award under the terms of the lease. These parties acknowledged that they had not filed counterclaims or any other claims against the plaintiffs in this action for attorneys' fees, but nevertheless claimed the right to such an award. The court directed both counsel, for Ferranti and for Harbor and Fiore, to file briefs citing authority for their claim that the court could award attorneys' fees to them (if they prevailed) even in the absence of pleadings claiming such relief. Ferranti failed to address the issue at all in his post-trial brief. Fiore and Harbor addressed the issue in their brief, but failed to provide any authority for their claim that they can be awarded attorneys' fees in the absence of any pleading seeking such relief. (Moreover, Fiore and Harbor failed to explain how they can seek the benefit of provisions in the Seaview lease when they are not parties to that lease.) No attorneys' fees are CT Page 6742 awarded to the defendants.
Judgment is entered for the plaintiffs against Seaview Subaru, Inc. and Michael Ferranti for $3026.64 damages plus $2500.00 attorneys' fees and costs. Judgment is entered for Harbor Motors, Inc. on the third-party complaint. Judgment is entered for Hugh Fiore, Jr. on the cross-complaint. Judgment is entered for the plaintiffs on the counterclaim.
Vertefeuille, J.