[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a dispute between landlord and tenant. The action commenced in 1994 in small claims court where the plaintiff, Rosemary A. Gurn, claimed the defendant, Nancy J. Oldaker, had refused to vacate a condominium unit owned by the plaintiff and occupied by the defendant, following the expiration of a lease agreement between the parties. Gurn sought one month's rent ($1,100) plus attorney's fees of $556.60 for a total claim CT Page 8128 of $1,650.60.
The defendant filed her Answer on January 12, 1995, denying each and every material allegation of plaintiffs complaint, filed a Counterclaim in fifteen counts and moved for transfer to the Superior Court, which motion was granted. After a long and tangled journey through the system[1] a hearing on the merits was held on March 21, 2000.
 II
At all times pertiment to this matter, the plaintiff, Gurn, was the owner of a residential condominium unit known as Apt. B-1, 330 Merwin Avenue in the Town of Milford . . . On or about September 12, 1991 the plaintiff and defendant entered into a lease agreement ("the first agreement") for one year with a total rent of $13,200.00, payable in monthly installments of $1,100.00. The agreement included the following clause:
"*Addendum: Lessor agrees to apply 50% of monthly rental towards the purchase price of the condominium in the event the Lessee desires to purchase the condo at the end of the lease term. The selling price of the condominium is $160,000, but may be negotiable depending upon overal [sic] market price/value at the time of the end of the lease.
"Lessor retains the right to give the Lessee first choice of placing an offer or bid for the condominium. However, if the Lessee decides not to purchase the unit by the 9th month of the lease, the Lessor may begin to show the unit to potential buyers." (Defendant's Exhibit "A").
In September, 1992, the parties again entered a lease agreement("the second agreement") for one year on essentially the same terms. However, the above-cited "Addendum" provision is replaced by the following:
"In the event the Lessor decides to sell said property during the last ninety days of this lease, the Lessor [sic] shall have the first option to purchase the property. Lessor agrees to apply 50% of the Lessee's accumulated monthly payment of $ 1,100.00 toward the purchase price of the property. The Lessor shall give the Lessee 30 days notice of intent to sell. If after 30 days the Lessee does not desire to purchase the property at an agreed upon price between the Lessor and Lessee, the Lessor can put the property up for sale on the open market. The Lessee agrees to allow the Lessor to enter said premises for the purpose of showing the property to prospective buyers only after the Lessor has given the Lessee a minimum of 24-hours notice. Putting said property up for sale on the open market cannot occur more than 60 days prior to the end of this lease." CT Page 8129
Then follows a handwritten note: "Note: Accumulated from beginning of lease (original 1991) towards purchase price —
 13,200 1,100 security Total $14,300
$125,700 — "(Defendant's Exhibit "B")
On or about September 29, 1993, the parties entered into a third lease agreement ("the third agreement") for one year, on essentially the same terms as the second. It included a typed paragraph identical to the typed addendum regarding "First option to purchase" found in the second agreement and quoted above. However, following said paragraph is a hand-written provision: "Also Included is 50% on down payment from accumulated (lease) rent for 1991; October — 1993 — total to date $13,200.00. Also, the $1,100.00 security deposit totaling down payment for previous years to $14,300.00 (Fourteen Thousand, Three Hundred dollars) This money held is to be used as down payment only, excluding security deposit." (Plaintiffs Exhibit "1").
 III
As indicated, Oldaker's Counterclaim is in fifteen counts. The Counterclaim is framed so that the First, Fourth, Seventh, Tenth and Thirteenth Counts allege violations of the first lease agreement (September, 1991 — October, 1992; the Second, Fifth, Eighth, Eleventh and Fourteenth Counts allege violations of the second lease agreement (September, 1992 — October, 1993); the Third, Sixth, Ninth, Twelfth and Fifteenth Counts allege violations of the third lease agreement (September 1993 — October, 1994).
The Court finds that the first, second and third lease agreements constituted each a separate and distinct agreement between the parties. The first and second lease agreements had expired by September 30, 1993, and there was no evidence that either party had breached the terms of the first or second agreements during the times they were in effect. Accordingly, the First, Second, Fourth, Fifth, Seventh, Eighth, Tenth, Eleventh, Thirteenth and Fourteenth Counts of the defendant's Counterclaim are dismissed.
 IV
The claims in the third, sixth, ninth, twelfth and fifteenth counts of the defendant's counterclaim are with reference to the third agreement. CT Page 8130
The third one year lease expired on September 30, 1994, and was not renewed. Oldaker failed to pay rent for October and refused to vacate the premises. Gurn applied the security deposit to the October rent and went to Housing Court to evict Oldaker from the premises. The parties entered into a stipulation that a judgment of immediate possession be entered in favor of Gurn with a final stay of execution through and including November 15, 1994. As indicated, Gurn claims she is entitled to the November rent and the attorney's fees incurred in the effort to evict Oldaker. Oldaker does not dispute that she remained in the premises until mid-November, 1994.
Rather, Oldaker claims Gurn violated the lease agreement between the two parties.
The gravamen of Oldaker's claim is that the 50% of the monthly rental which the parties agreed would be applied to the purchase price, should Gurn elect to sell, and Oldaker elect to purchase, the said premises, should be returned to Oldaker[.] Oldaker seeks money damages, double and treble damages, punitive damages, attorney's fees, pursuant to General Statutes, Section 42-110g (a) ("CUTPA"), legal interest and that the court impose a "construction [sic] trust" for the benefit of Oldaker.
 V
"A lease is a contract. In its construction, three elementary principles must be kept constantly in mind: (1) the intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. Ingalls v. Roger SmithHotels Corporation, 143 Conn. 1, 6, 118 A.2d 463 (1955)," HatchoCorporation v. Della Pietra, 195 Conn. 18, 20.
In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties, (citation omitted). Id., at 20.
By terms of the third lease agreement, Gurn was obligated to give Oldaker the first option to purchase the property and, should the parties reach agreement to purchase and sell the said property at an agreed-upon price, to credit 50% of the monthly rental payments from October, 1991 through October, 1994 against said purchase price. These obligations were CT Page 8131 contingent on Gurn deciding to sell, Oldaker deciding within 30 days to exercise her first option to purchase, and the parties agreeing on a purchase price. Oldaker failed to establish, by a fair preponderance of the evidence, that any of these events occurred.
The court finds: (1) Gurn was under no obligation to sell the subject property during the life of the agreement. (2) The agreement at issue does not establish an agreed-upon price. (3) The lease agreement makes no provision for return of any portion of the rent monies should Oldaker vacate the premises.
The last sentence of the hand-written addendum must be considered. It reads: "This money is to be used as down payment only, excluding security deposit."
This last sentence, taken out of context, is ambiguous. In context, the Court finds that the handwritten addendum to the addendum expands on the provision reading; "Lessor agrees to apply 50% of the Lessee's accumulated monthly payment of $ 1,100.00 toward the purchase price of the property." All provisions relating to crediting 50% of rental payments are subject to the condition stated at the outset of the addendum: "In the event the Lessor decides to sell said property during the last ninety days of this lease, . . ." The provisions of the agreement having reference to a credit of 50% of the accumulated monthly rental payments come into play only if the Lessor decides to sell the subject property.
When there is an ambiguity as to the meaning of the terms of a written agreement, the terms at issue must be construed against the author of the writing. Levine v. Advest, Inc., 244 Conn. 732, 755-56.
Oldaker has failed to establish, by a fair preponderance of the evidence, that the handwritten provisions of the agreement were authored by Gurn. Indeed, the handwriting appears to be Oldaker's.
The court finds there was no agreement between the parties that 50% of the accumulated monthly rental paid from October 1991 through October 1994 would be returned by the plaintiff, Gurn, to the defendant, Oldaker, when the lease agreement between the parties expired with no agreement between the parties for sale and purchase of the subject property.
 VI
In her Sixth Count, Oldaker claims that Gurn promised to sell the said condominium to her if Oldaker would enter the third lease agreement, that Gurn's promise was false and made with the knowledge that Oldaker would CT Page 8132 rely on such promise. The defendant Oldaker failed to establish this claim by a fair preponderance of the evidence.
In her Ninth Count, Oldaker alleges breach by Gurn of a duty or fiduciary or other special relationship to and with Oldaker, entithng Oldaker to a declaration that Gurn hold her interest in the subject property, or 50% of the rentals paid as a constructive trust for the benefit of Oldaker. The defendant Oldaker has failed to establish this claim by a fair preponderance of the evidence.
In her Twelfth Count, Oldaker repeats earlier allegations and claims unjust enrichment by Gurn by virtue of receipt by Gurn of rent in excess of the fair market value and retention of that portion of the rent in excess of 50%. Because the Court has found that the monthly rental of $ 1,100.00 was not in excess of fair market value, this claim must also fail.
In her Fifteenth Count, Oldaker claims Gurn's actions constituted a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes, §§ 42-110a et seq., in that Gurn's actions were immoral, oppressive and unscrupulous and caused substantial injury to Oldaker. The Court finds that the defendant Oldaker has failed to establish, by a fair preponderance of the evidence, that the plaintiff Gurn, defendant in the Counterclaim, engaged in unfair or deceptive acts or practices as lessor of the subject property and that Oldaker failed to establish that Gurn's actions constituted a violation of CUTPA.
 VII
On the plaintiff Gurn's Complaint, the Court finds that the plaintiff Gurn has established, by a fair preponderance of the evidence, her claims against the defendant, Oldaker, for November, 1994 rental in the amount of $1,100.00 and attorney's fees in the amount of $560.60 for services in connection with obtaining possession of the subject premises.
On the defendant Oldaker's Counterclaim, the Court finds the defendant Oldaker has failed to establish, by a fair preponderance of the evidence, any of her claims against the plaintiff Gurn.
Accordingly, on the Counterclaim, judgment may enter in favor of the plaintiff, defendant on the Counterclaim, Rosemary A. Gurn.
On the plaintiffs Complaint, judgment may enter in favor of the plaintiff. Rosemary A. Gurn as against the defendant, Nancy J. Oldaker, in the amount of One Thousand, Six Hundred and Sixty and 60/100 Dollars ($1,660.60). CT Page 8133
 By the Court, Downey, J.