## HATCHO CORPORATION ET AL. *v.* IRMA DELLA PIETRA
### (11837)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued November 7, 1984—decision released January 15, 1985

*Frederick W. Odell,* for the appellants (plaintiffs).

*Joel E. Janenda,* with whom, on the brief, was *James J. Sullivan,* for the appellee (defendant).

DANNEHY, J. The principal question upon this appeal relates to the construction of a lease; the relevant facts out of which the question arises appear hereafter.

On April 1, 1979, David and Robert Odell (two of the plaintiffs) leased from Irma Della Pietra (the defendant) "The Green Tavern," consisting of approximately 600 square feet on the ground floor of the premises known as 622 East Middle Turnpike, Manchester, for a term of four years with the option of renewal for two successive four year terms. The lease was subsequently assigned, with the defendant's consent, to the plaintiff Hatcho Corporation, a Connecticut corporation wholly owned by the individual plaintiffs.

The dispute between the parties concerns the construction of language in the lease providing that the premises were demised "for use as a tavern as defined in Section 30-1 of the Connecticut General Statutes . . . ." At the time the lease was executed, General Statutes (Rev. to 1979) § 30-1 (30) defined a "tavern" as "a place where beer is sold under a tavern permit." During the 1980 Connecticut legislative session, the definition of "tavern" was amended to "a place where beer and wine are sold under a tavern permit." Public Acts 1980, No. 80-198, § 2. The change became effective October 1, 1980. By letter dated September 26, 1980, the defendant advised the plaintiffs that "the selling of wine on your premises is not permitted under the terms of your lease" and that any violation of the terms of the lease would result in legal action to evict the plaintiffs from the premises. At no time have the plaintiffs served any alcoholic beverages other than beer and hard cider on the leased property.

On March 21, 1982, the plaintiffs brought an action seeking: (1) a temporary and permanent injunction prohibiting and restraining the defendant from taking legal action against or evicting the plaintiffs solely because they sell wine as allowed by General Statutes § 30-1 as amended by Public Acts 1980, No. 80-198, § 2; (2) a temporary and permanent injunction prohibiting and restraining the defendant from violating the Connect-

icut anti-trust act; (3) monetary damages; (4) treble damages, costs and attorney fees; and by later amendment (5) a judgment declaring that the portion of the lease which reads "for use as a tavern as defined in Section 30-1 of the Connecticut General Statutes" does not prohibit the plaintiffs' sale of wine at the leased premises; and (6) a judgment declaring that the sale of wine at the premises leased by the plaintiffs from the defendant is not prohibited. The trial court concluded that the lease prohibited the sale of wine at the demised premises and rendered judgment accordingly. The plaintiffs appealed. There is no error.

A lease is a contract. In its construction, three elementary principles must be kept constantly in mind: (1) the intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Ingalls* v. *Roger Smith Hotels Corporation,* 143 Conn. 1, 6, 118 A.2d 463 (1955).

The circumstances to be considered are those known to the parties when the lease was made. At trial, the defendant testified that she had lived on the second floor of the leased premises for approximately fifty years; that there had never been any kind of liquor business conducted on the premises during that period other than a tavern business which sold beer and hard cider; and that the lease she had entered into with the plaintiffs contemplated only a continuation of the use of the premises for the sale of beer and hard cider. The plaintiffs testified that they had leased the defendant's premises for use as a tavern; that the previous owners sold only beer and hard cider; that at the time the lease

was executed, a tavern, operating under a tavern permit, could serve only beer and hard cider; and that they were fully aware, when they entered into the lease with the defendant to use the premises as a tavern, that only beer and hard cider could be sold on the premises.

There is no dispute that parties contract with reference to existing law, except when the contract discloses a contrary intention. *Ciarleglio* v. *Benedict & Co.,* 127 Conn. 291, 293, 16 A.2d 593 (1940). Unless the agreement indicates otherwise, a statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein. Id. Contrary to the plaintiffs' contention, we find the terms of the lease unambiguous. While it may be true that the parties could not foresee that the existing law might change, a court cannot import into the agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms. *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 374, 321 A.2d 444 (1973). "We assume no right to add a new term to a contract, though it were clear that had the attention of the parties been called to it in all probability it would have been inserted." *Williams* v. *Lilley,* 67 Conn. 50, 59, 34 A. 765 (1895).

In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties. *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 682, 102 A.2d 875 (1954). The construction and legal effect of the expressed terms will not be varied by reason of inconvenience to the parties or unreasonableness of the terms. Id.

The lease conveyed the following property interest: "certain premises located at 622 East Middle Turnpike,

Manchester, Connecticut, known as 'The Green Tavern,' being approximately 600 square feet on the ground floor of said premises, together with two (2) bars located in said premises, for use as a tavern as defined in Section 30-1 of the Connecticut General Statutes, and together with the right in common with others to use the parking areas in front and to the rear of the building of which the demised premises are a part, for the term of four (4) years from the first day of April, 1979, or upon the date when the Tenants receive their tavern permit from the State of Connecticut Liquor Control Commission." This language expressly limits the use of the premises to "a tavern as defined in Section 30-1 of the Connecticut General Statutes . . . ." It further conditions the effective date of the lease term on the plaintiffs' receipt of a "tavern permit." From a reading of the provision as a whole, it is clearly the expressed intention of the parties that the premises be operated as a "tavern" under a "tavern permit" as a tavern and a tavern permit were then defined.

Both "tavern" and "tavern permit" are defined in chapter 545, the liquor control act, of the Connecticut General Statutes. At the time the lease was executed, § 30-1 (30) defined a "tavern" as "a place where beer is sold under a tavern permit." Section 30-26 provided that: "A tavern permit shall allow the retail sale of beer and cider not exceeding six per cent of alcohol by volume to be consumed on the premises with or without the sale of food." The express terms of the lease, then, limited the type of permit and the permit limited the type of alcoholic beverages which could be served.

The plaintiffs argue that the language concerning the use of the premises should be interpreted as permissive rather than restrictive in nature. A provision authorizing the use of the premises for a specific purpose is generally regarded as permissive instead of restrictive unless there is express language so limit-

ing it. *Burr* v. *Spencer,* 26 Conn. 159 (1857). Therefore, a tenant will not be bound to a specified use unless the intention of the parties to confine the leased premises to a special use can be fairly implied from the terms of the lease. The intention of the parties must be determined from the language which they used in the lease. Here, the language could not be more specific in terms of the special use contemplated by the parties.

The liquor control act sets up a permit system whereby each permit classification defines the privileges accorded to the holder. The parties' specific reference to a statutory section of the liquor control act and the corresponding required permit indicates their familiarity with the classifications authorized by that act. If we were to accept the plaintiffs' argument that the terms of the lease merely allow for the sale of beer and hard cider and are permissive with respect to other alcoholic beverages, then the insertion in the lease of the statutory reference to § 30-1 and the required tavern permit would have no meaning. Parties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible. *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* 153 Conn. 618, 621–22, 220 A.2d 32 (1966). We cannot say that the deliberate reference to a specific statutory section constitutes a meaningless gesture by the parties. Rather, a reasonable interpretation of the express terms of the lease is that the parties intended to confine the use of the leased premises to a tavern business as then authorized by the liquor control act.

Finally, the plaintiffs contend that the defendant's insistence upon enforcing the restrictive terms of the lease constitutes a violation of the Connecticut antitrust act. General Statutes §§ 35-24 through 35-45. This claim is wholly lacking in merit.

It is unnecessary to resort to our usual analysis for determining the legality of an anticompetitive covenant. See *Elida, Inc.* v. *Harmor Realty Corporation,* 177 Conn. 218, 413 A.2d 1226 (1979). The claim involves only questions of fact for our review. The evidence does not show that the plaintiffs have suffered a threatened loss or injury to their business or property by any action of the defendant. See General Statutes §§ 35-34 and 35-35. Consequently, the trial court decided these questions adversely to the plaintiffs on evidence sustaining its findings.

There is no error.

In this opinion the other judges concurred.