[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to Connecticut General8-8 wherein petitioner challenges the respondent's denial of a special permit and site plan pursuant to the Building Zone Regulations of the Town of Greenwich (hereinafter Regulations). Petitioner, D'Andrea Brothers Realty, asks this court to vacate the decision of the respondent, Planning and Zoning Commission of the Town of Greenwich, and to instruct respondent to approve the special permit and site plan submitted by the petitioner. Respondent opposes the Petition and asserts, inter alia, that the applied for use is not permissible under the rules set forth in the Regulations for special permit and site plan approval.
The Facts CT Page 2267
The subject property is located in a residential zone (R-12) and has been utilized as a commercial nursery with accessory office use pursuant to a Stipulation for Judgment which was entered into between the parties on December 4, 1985 and approved by the Superior Court on January 28, 1986. On or about August 18, 1992, D'Andrea Brothers Realty (hereinafter D'Andrea), record owner of the premises known as 2 Deerfield Drive in the Town of Greenwich, filed an application for a special permit and site plan for a restaurant and gourmet shop at 2 Deerfield Drive with the Planning and Zoning Commission of the Town of Greenwich (hereinafter the Commission).
Public hearings were held on September 17, 1992, October 8, 1992, and October 27, 1992. In a decision dated November 17, 1992, the defendant denied the application for the special permit and site plan. Legal notices of the decision were published in The Greenwich Times and filed with the Town Clerk on November 20, 1992. The plaintiff received notice of the decision by certified mail on November 19, 1992. A letter dated November 30, 1992, setting forth the reasons for denial was received by the plaintiff on December 1, 1992. This appeal was filed on December 4, 1992.
The Commission based its denial of the special permit and site plan on three grounds: (1) a restaurant and gourmet shop are not a use allowable or permitted in an R-12 zone; (2) the proposed use did not comply with the zoning regulations for the R-12 zone (the Regulations do not allow for restaurant use in an R-12 zone); and (3) the Stipulation of Judgment did not extend the uses allowed by special permit beyond those uses permitted in an R-12 zone.
The Commission further determined that the proposed use would exacerbate an existing traffic problem and constitute a potential safety and public welfare problem. Also, the defendant concluded that the site plan's proposed parking for the restaurant and gourmet shop was inadequate and did not satisfy the Regulations.
In addition, the Commission found the proposed retail use did not meet the objectives of the 1985 Land Use Plan of Development which calls for a medium density residential use and protection against business uses in a residential zone. The defendant concluded that the likelihood of late night hours, seven days a week, with concomitant nuisance to adjoining residents from noise and lights of cars, was inharmonious with the adjoining residential neighborhoods. CT Page 2268
Essential to an understanding of this case is the history of an application filed by D'Andrea with the defendant in 1984, the year the plaintiff purchased the subject property. At that time the plaintiff submitted an application for a zone change from R-12 to general business and permission to construct a building consisting of 10,600 square feet. The Commission initially granted the zone change and site plan application on August 16, 1985, but later rescinded it as an error and denied the application on August 19, 1985. The petitioner appealed the denial of its application to the Superior Court. At that time the parties to this action negotiated the aforementioned Stipulation for Judgment.
The Stipulation for Judgment provided that the property would remain in the R-12 zone, that a special permit would be granted for the site plan to build the building of 10,600 square feet and that changes in use from a commercial retail nursery would require approval of the Commission through the special permit procedure. In June, 1986, the plaintiff requested clarification of paragraph 6[1] of the Stipulation for Judgment by the defendant and submitted a list of alternate uses. At its regular meeting on June 10, 1986, the defendant confirmed a list of uses which it would approve if they complied with the site plan and special permit procedures. Contained in the list was a restaurant use, so long as it had adequate parking.
On June 17, 1986, the Greenwich Town Planner sent a letter to D'Andrea's attorney setting forth a list of permissible uses. Plaintiff requested the Town Planner, in a reply letter dated June 24, 1986, to confirm that a restaurant use was permitted subject to regular site plan and for special permit approval by the Planning Zoning Commission. On June 24, 1986, the Town Planner signed the reply letter under the words "REVIEWED AND APPROVED."
D'Andrea then constructed a 10,600 square foot building and negotiated its sale to a third party to operate a restaurant and gourmet shop. Based on the aforementioned events, plaintiff filed the application which is the subject of this appeal.
The Issues
The action before the Court raises three main questions on appeal. D'Andrea claims that paragraph 6 of the Stipulation for Judgment, entered by the Court on January 28, 1986, permits a restaurant use on the subject premises. Thus, the first inquiry is CT Page 2269 whether a restaurant use is a permitted use for the subject property in light of the Stipulation for Judgment. Furthermore, plaintiff alleges that correspondence with the Town Planner of the Town of Greenwich confirmed that a restaurant use was permissible. Accordingly, the court must examine whether the ensuing attempts for clarification of the Stipulation for Judgment created either a modification of the Judgment itself, or a situation whereby the Commission is estopped from denying the plaintiff's application for a special permit and site plan.
Finally, the defendant, Planning and Zoning Commission of the Town of Greenwich, asserts that the proposed use does not comply with the standards set forth in the Regulations for special permit and site plan approval due to a resultant unacceptable increase in traffic and inadequate parking.
The Law
In this case, the Commission entered into a Stipulation for Judgment with D'Andrea in settlement of a zoning appeal pursuant to General Statutes 4-177 (d). The Superior Court approved the agreement in satisfaction of General Statutes 8-8 (n). The public interest is served by the settlement of disputes void of judicial intervention. Agencies may more efficiently allocate their limited resources and serve the public when not tethered to the burdens of litigation. When negotiated resolutions are achieved they are considered binding; and are strictly construed by the courts. Albert Mendel Son, Inc. v. Krogh, 4 Conn. App. 117, 122 (1985), citing with approval Winn-Dixie Stores, Inc. v. F.T.C., 377 F. Sup. 773
(M.D.Fla. 1974) and 4 Mezines, Stein Gruff, Administrative Law, 33.01.
The United States Supreme Court provided guidelines regarding consent decrees in United States v. Armour Co., 402 U.S. 673,91 S.Ct. 1752, 29 L.Ed.2d 256 (1971).
 Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the CT Page 2270 litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes, as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purpose of one of the parties to it. Id. at 681-82.
A stipulation is thus a contract and the Court is compelled to observe the three fundamental principles of contract construction: (1) it is the parties' intentions, as gathered from the language and circumstances surrounding the creation of the instrument, which is controlling; (2) the language, when void of any technical or specialized terms, must be given a fair, reasonable and ordinary meaning; and (3) the contract is to be construed as a whole and all provisions are to be accorded effect. See Hatcho Corporation v. Della Pietra, 195 Conn. 18, 20, 485 A.2d 1285 (1985); Sturman v. Socha, 191 Conn. 1, 10, 463 A.2d 527 (1983); Ingalls v. Roger Smith Hotels Corporation, 143 Conn. 1, 6, 118 A.2d 463 (1955). "When the plain meaning and intent of the language is clear, a clause in a written [contract] cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given affect according to its language." Collins v. Sears, Roebuck Co., 164 Conn. 369, 373-74,321 A.2d 444 (1973). Parties ordinarily do not insert meaningless provisions into their agreements and therefore every provision of the contract must be given effect if reasonably possible. A.M. Larson v. Lawlor Ins. Agency, Inc., 153 Conn. 618, 621-22,220 A.2d 32 (1966). Thus, parole evidence will not be admitted when the intent of the parties is clearly indicated. The intent of the parties is deemed to be a question of fact. See First Hartford Realty Corporation v. Ellis, 181 Conn. 25, 33, 434 A.2d 314 (1980).
Unless the instrument itself discloses a contrary intention, parties are deemed to form contracts with reference to the laws existing at the time of execution. Ciarleglio v. Benedict Co.,127 Conn. 291, 293, 16 A.2d 593 (1940). A prevailing statute is deemed to be part of an agreement and must be read as if contained in the document itself, void of expressed contradictory intention. Id.
The plaintiff claims a restaurant use is permitted by the Stipulation for Judgment and that the defendant is precluded from CT Page 2271 denying such use. The plaintiff does not dispute that a restaurant use is not permitted in an R-12 zone (see Greenwich Zoning Regulations 6-94 (b)) and correctly states that paragraph 3[2] of the Stipulation states that the subject property is to remain zoned as R-12. Also the plaintiff is correct to assert that paragraph 6 allows for changes by means of special permit application (see Greenwich Zoning Regulations 6-17).
Plaintiff argues that if paragraph 6 were only to apply to changes within an R-12 zone to other permitted uses in an R-12 zone it would be meaningless and superfluous. The argument is that because paragraph 3 confirms that the premises shall remain in the R-12 zone, each of the uses set forth in Section 6-94 (b) are already permissible in the Stipulation pursuant to paragraph 3. Therefore, plaintiff contends that such a restrictive interpretation, as taken by the Commission, would render paragraph 6 unnecessary, since paragraph 3 permitted changes in use via the special permit procedure for those uses listed in Section 6-94 (b). This leads to the conclusion that for paragraph 6 to have any independent meaning and not simply repeat what was already allowed for in paragraph 3, the uses contemplated in paragraph 6 would have to pertain to uses not permitted in the R-12 zone. The plaintiff contends that while a restaurant use is not permitted in paragraph 3 of the Stipulation, nor 6-94 (b) of the Regulations, paragraph 6 allows for it if the special permit procedure is complied with. Thus, plaintiffs ultimate contention is that paragraph 6 refers to uses other than those permitted in an R-12 zone.
The Court is not persuaded that paragraph 6 is void of meaning if not construed so as to provide for uses beyond those provided in 6-94 (b). Rather, the Court interprets the inclusion of paragraph 6 to indicate that the defendant is not opposed to other uses for the subject property, so long as they are permitted in an R-12 zone, and that the plaintiff would have to go through the special permit procedure to obtain the Commission's approval for such other uses.
Paragraph 6 must be read in light of paragraph 4[3] as well as paragraph 3. Paragraph 4 specifically addresses and reminds one of the purpose for the underlying dispute for which the Stipulation was formed. Namely, the approval of a nursery and accessory office use. This bolsters the Court's view that the sixth paragraph was included to inform that any use, other than the agreed to nursery, would require a specific special permit and site plan application and that any change would trigger a separate review process. CT Page 2272
Plaintiff claims that the subsequent conduct of the parties is strong presumptive evidence of their intention as to construction but offers the Court no authority for this assertion. However, this claim can be disposed of by the application of the rule that parol evidence is not to be examined when the parties intention can be determined from the agreement itself. Welch v. Arthur A. Fogarty, Inc., 157 Conn. 538, 547, 255 A.2d 627 (1969).
The parties subsequent actions would more properly be evaluated in a court's examination of whether a modification of the Stipulation was consummated. In order to prove that a contract has been modified, the party claiming modification must demonstrate mutual assent to its meaning and conditions. Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397, 402, 365 A.2d 1086 (1976). In June, 1986, D'Andrea requested a clarification of paragraph 6 of the Stipulation as to what uses would be permitted by the defendant. The Commission in turn asked the Town Planner to compile such a list. In a letter dated June 17, 1986, the Town Planner communicated to the plaintiff's attorney a list of uses which would not be permitted as well as a list of uses which might be permitted subject to regular site plan and for special permit approval by the Commission.[4] The Court did not observe any evidence that the Commission voted on, or took other official action which would be necessary for a change to occur in the Regulations. See Conn. Gen. Stat. 8-26c, 8-28. Also, no modification of the Stipulation may be found absent the exchange of valid consideration. See Thermoglaze, Inc. v. Morningside Gardens Company, 583 A.2d 1331 (1991). Finally, with regard to the letters sent to the plaintiff's attorney by the Town Planner, the plaintiff's have failed to demonstrate how such letters constitute official acts by town authorities. See Zoning Commission v. Lescynski, 188 Conn. 724, 733, 453 A.2d 1144 (1982).
Any claim of estoppel is established only upon proof of two necessary elements: "the party against whom the estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exists and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." Zoning Commission v. Lescynski, 188 Conn. 724, 731, 453 A.2d 1144 (1982). Normally estoppel may not be raised against the government or a public agency functioning in a governmental capacity. West Hartford v. Gelinas, 18 Conn. App. 688, 690-91 (1989). An exception to the general rule exists, and the doctrine may be CT Page 2273 invoked only with great caution, by one who's actions were the result of inducement by the conduct of local officials and where they would suffer a substantial loss if the municipality were permitted to negate the acts of its agents making it highly inequitable or oppressive. Pet Car Products, Inc. v. Barnett,150 Conn. 42, 53, 184 A.2d 797 (1962); West Hartford v. Rechel,190 Conn. 114, 121, 459 A.2d 1015 (1983). Importantly, it is the burden of the party asserting "the estoppel to show that they exercised due diligence to ascertain the truth and that they not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 54, 184 A.2d 797 (1962).
There is no showing that the Commission or any agent of the Town, whose duty it was to enforce the zoning regulations, acted erroneously, induced the plaintiff's action, or that the plaintiff relied on any judgment but its own, or that it took any pains to investigate the legitimacy of its actions. See Planning Zoning Commission v. Derosier, 15 Conn. App. 550, 558-59 (1988). Reliance on the unsanctioned acts of a town official do not satisfy the burden which the moving party must carry in an estoppel action. What may be characterized as the personal belief of the Town Planner "cannot be deemed to have been officially authorized by the municipality." Zoning Commission v. Lescynski, 188 Conn. 724, 733,453 A.2d 1144 (1982).
Plaintiff asserts that based on the aforementioned letter to its attorney by the Town Planner and the Commission's representations, it obtained financing to construct a building which could be specifically converted into a restaurant if the nursery business was unsuccessful of if the plaintiff wished to sell the building. D'Andrea alleges that its reliance on the Commission was ultimately manifested in its application for the special permit for a restaurant use made on August 18, 1992. The plaintiff contends that rather than disclose that a restaurant use would not be permitted because of the R-12 zone location of the subject property, the Commission and its staff encouraged the plaintiff to spend substantial resources on legal, architectural and traffic experts in support of its application which was later ruled not to be permissible on its face because it was in the R-12 zone.
Defendant has countered that estoppel is not appropriate because their was no reason for the plaintiff, a sophisticated business enterprise, represented by counsel, to rely on non-binding CT Page 2274 statements. This is argued to be particularly significant in light of D'Andrea's admission that the statements were allegedly made solely to assist it in obtaining financing, rather than to formally change the special permit requirements of the tone or its property. Finally, there is no evidence that the Town took any intentional action to induce reliance by D'Andrea and that D'Andrea changed its position in reliance on those facts, thereby incurring a related injury.
When a zoning commission takes action upon a special permit application, it is compelled to provide a rationale for its action. Conn. Gen. Stat. 8-3c. "In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." Zieky v. Town Plan Zoning Commission, 151 Conn. 265, 267-68, 196 A.2d 758 (1963). The court should not go behind the official report to search the record for other reasons to support the decision. DeMaria v. Planning 
Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105 (1970). In reviewing the denial of a special permit, it is sufficient if any one of the agency's given reasons supports the action. Friedman v. Planning Zoning Commission, 222 Conn. 262, 268 (1992). Only where none of the reasons provided are valid and no other apparent problems of noncompliance exists may a court sustain an appeal and order a special permit or site plan granted. DeMaria v. Planning Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105 (1970); Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256,261 (1992).
When reviewing a special permit or site plan, a zoning commission is acting in an administrative capacity. Sheridan v. Planning Board, 159 Conn. 1, 16, 266 A.2d 396 (1970). The commission is charged with making a determination of whether: "(1) the proposed use of the property is expressly permitted under the zoning regulations; (2) whether the standards in the relevant zoning regulations are satisfied; and (3) whether conditions necessary to protect public health, safety, convenience and property values can be established." Conn. Gen. Stat. 8-2. If a special permit or site plan application satisfies the existing statutes and regulations, it must be approved. The applicant must only be required to meet those conditions contained in the regulations themselves. DeMaria v. Planning Zoning Commission,159 Conn. 534, 540-41, 271 A.2d 105 (1970). Denial of a special CT Page 2275 permit is only appropriate if specific standards are not met; not for vague and general reasons. Id. "`The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised.'" Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 262 (1992) citing Oakwood Development Corporation v. Zoning Board of Appeals, 20 Conn. App. 458,460, 567 A.2d 1260, cert. denied, 215 Conn. 808, 576 A.2d 588
(1990).
A portion of General Statutes 8-2 offers that zoning regulations "shall be designed to lessen congestion in the streets." Hence, the inquiry is not as to the total volume of traffic, but whether an increase caused by the approval of the special permit and site plan would cause congestion. Furthermore, the use sought in the special permit must create greater congestion and have a greater impact on the area than that which is caused by other permitted uses for the same property not requiring a special permit. Grace Community Church v. Planning Zoning Commission,42 Conn. Sup. 256, 264 (1992).
If a site is designated as a permitted use, a conclusive presumption is established that it does not adversely effect the area and examination of the effect the use would have on traffic is precluded. Id. citing Beit Havurah v. Zoning Board of Appeals,177 Conn. 440, 443, 418 A.2d 82 (1979). However, as pointed out by the Court in Grace Community Church, a different standard applies to special permits, as they are not permitted uses. Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 264
(1992). Moreover, in Friedman v. Planning Zoning Commission,222 Conn. 262 (1992), the appellate court upheld the trial court's decision that plaintiffs could not prevail on their claim that the zoning commission could not look at off-site traffic issues, notwithstanding that the use was a permitted use in the applicable zone. Id.
The Commission ultimately denied both the special permit and site plan application based on excessive traffic and a lack of on-site parking. Primarily, the Commission was concerned with the effect of the increase in traffic on the intersection of Deerfield Drive and U.S. Route 1. While the plaintiff argues that the record satisfies the standards set forth in 6-15 and 6-17 of the Regulations relating to site plans and special permits, respectively, the Court is not convinced. CT Page 2276
The Commission found, in agreement with plaintiff's own expert, that a restaurant and retail shop would generate additional traffic. Furthermore, the Commission determined that increased traffic congestion was a safety concern and that the added vehicular use of the surrounding roads would adversely affect the predominately residential neighborhood. It bears repeating that a court may not substitute its opinion for that of the Commission, but rather must satisfy itself that the Commission's actions were pertinent and supported by the record. Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 262 (1992).
In the case of Whispering Wind Development Corp. v. Planning Zoning Commission, 32 Conn. App. 515 (1993), a recent Appellate Court decision, the commission made the determination that the location, size and nature of the proposed use would result in the creation of a traffic hazard and would clash with traffic characteristics of the surrounding neighborhood. Id. at 516. The court affirmed that an applicant's inability to satisfy the general health, safety and welfare requirements of town zoning regulations provided an appropriate basis for the denial of a special permit application. Id. at 520.
In addition, the Commission found that the site plan was not met due to a shortage of on-site parking facilities for patrons and employees alike. The Town Engineer determined that many of the proposed spaces were too small and therefore inaccessible or created inadequate space in which to operate motor vehicles safely. Upon review of the record the court found a great deal of discussion regarding the parking situation on-site and is left with the impression that at the time of this appeal the Town had not yet received a pending submission by the plaintiff. The court is aware that the plaintiff was attempting to supply 60 acceptable parking spaces, but the Commission deemed as many as 94 would be required during peak periods. In any event, the standard to be applied is the same as that in regards to special permit applications and the Court is satisfied that the Commission has identified a legitimate area of concern and has sufficient evidence in the record to deny the site plan.
Finally, the plaintiff has raised the issue of the imposition of reasonable conditions by the Commission to remedy any outstanding concerns it may have. In Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 264 (1992), the court recognized such requirements as a viable option. Id. at 272, CT Page 2277 278. Unfortunately, the plaintiffs have failed to bring to the Court's attention any foundation to support that the imposition of conditions by a Commission is anything more than an option. of the Regulations provides that "as a condition of approval, may require such modification of the proposed plans as it deems necessary to comply with the spirit as well as the letter of these Regulations." Greenwich Municipal Code 6-15 (July, 1992) (emphasis added). Lacking evidence that such conditions are so much as preferred, the court is forced to disregard this proposition by the plaintiff.
Accordingly, based upon consideration of the applicable statutes and the ensuing standards, this Court concludes that the denial of a special permit and site plan application by the respondent was appropriate and should not be disturbed by the judiciary. For the reasons stated herein, the petition is denied.
HICKEY, J.