[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff by this action seeks possession of the premises occupied by the defendant. On June 15, 1999 the plaintiff, Norwich Housing Authority, served upon the defendant, Karen Majewski, a notice declaring the termination of a written lease for permitting an unauthorized person to become an occupant of the apartment without the consent of the plaintiff. The notice ordered the defendant to quit possession of the premises on or before June 21, 1999. The plaintiff filed the complaint on June 30, 1999, alleging that the defendant allowed Paul Johnson to become an occupant of her apartment in violation of various provisions of the lease agreement.
At trial, the following facts were established. The defendant rents from the plaintiff an apartment where she lives with her three children. Paul Johnson, who is the father of one of the defendant's children, visits the apartment daily. Johnson testified and admitted that he stayed in the apartment overnight on an average of three nights each week since the birth of his child in December 1997. The defendant's testimony agreed with Johnson that she allowed him to stay in the apartment at least three nights per week for the last several years. The issue here is whether the defendant, in allowing Johnson to stay in her apartment for an average of three nights each week, has violated the paragraph of the lease requiring the plaintiff's approval for guests to stay in the apartment for more than seven days.
The lease provides, in relevant part: "GUESTS MAY STAY IN YOUR APARTMENT FOR SEVEN (7) DAYS WITHOUT THE PRIOR APPROVAL OF THE CT Page 616 AUTHORITY. HOWEVER, AT THE EXPIRATION OF THIS SEVEN (7) DAY PERIOD, YOU MUST HAVE THE AUTHORITY'S APPROVAL FOR ANY GUESTS TO STAY IN YOUR APARTMENT. REQUESTS FOR GUESTS TO REMAIN BEYOND THIS SEVEN (7) DAY PERIOD SHOULD BE MADE IN WRITING TO THE EXECUTIVE DIRECTOR OF THE AUTHORITY. `Guest' means a person in the APARTMENT with the consent of a household member." The lease is for a term of one month with automatic renewal each month in the absence of termination by either party.
The defendant argues that she has not violated her lease because she has not had a guest stay in her apartment for more than seven consecutive days. According to the defendant, the guest clause of the lease is ambiguous in that it fails to make clear whether it applies only to guest visits of seven consecutive days or to any situation in which a guest stays for seven total days in a one-month lease period. She argues further that the provision is ambiguous in that it does not make clear whether it addresses only the situation in which one guest is a visitor for seven days or whether it would also apply to the situation in which multiple guests stay with the tenant for a total of seven days. She urges the court to construe the ambiguous provision in her favor and conclude that, because her guest did not stay in her apartment for more than seven consecutive days, she was not in violation of her lease.
The plaintiff argues that the lease provision unambiguously applies to any situation in which a guest stays for more than seven total days during a one-month lease period. This is so, according to the plaintiff, because the provision does not include the word "consecutive." The plaintiff further argues that under the interpretation advocated by the defendant, a guest could actually reside in a tenant's apartment for the entire month, so long as the guest spent every eighth night elsewhere.
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Issler v. Issler,250 Conn. 226, 235, (1999). "A lease is a contract." Hatcho Corp. v. DellaPietra, 195 Conn. 18, 20, 485 A.2d 1285 (1985). "A contract is to be construed as a whole and all relevant provisions will be considered together. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. . . . The CT Page 617 intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity, in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Citation omitted.) HLO Land Ownership Associates Ltd. v.Hartford, 248 Conn. 350, 356-57, 727 A.2d 1260 (1999).
The defendant's argument, that the guest provision is ambiguous, is persuasive only if the provision is read out of context. The provision, however, is a part of the lease agreement between the parties and must be read in the context of the whole agreement. The provision in question is subsection C under Section 1 of the lease, called "WHO MAY LIVE IN THE APARTMENT/RIGHT TO USE AND OCCUPANCY." Subsection A lists the individuals entitled to live in the apartment, namely the defendant and three children. Subsection B states that unauthorized occupancy by any person other than those listed is a material breach which may lead to eviction. Subsection D provides that a foster child or live-in aide may reside in the apartment with advance consent of the plaintiff.
The guest provision, therefore, must be read in context as a clause designed to limit who may live, use and occupy the apartment. The plaintiff has argued that if the clause addressed only the situation in which a guest stayed in the apartment for more than seven consecutive days, there would never be any requirement that the defendant obtain the plaintiff's approval so long as the guest slept elsewhere every eighth night. This could lead to a "guest" actually living in the apartment, with no duty on the part of the defendant to inform the plaintiff. Such a result would obviously be contrary to the intention of the parties, as expressed in the section heading, to limit, occupancy of the apartment. CT Page 618
On the other hand if the language of the clause is interpreted to apply to the total number of days, consecutive or otherwise, then the intention of the parties to limit occupancy of the apartment would be furthered by the provision. Under such an interpretation, an individual guest would be precluded from residing in the apartment for more than seven days per month-long lease period without approval. The language of the provision, taken in the context of the whole lease is therefore unambiguous. This court need not reach the rules of construction requiring the lease to be construed against the drafter or in favor of the lessee, because those rules apply only to cases in which an actual ambiguity exists. "The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction." Levine v. Advest,Inc., 244 Conn. 732, 746, 714 A.2d 649 (1998).
Even if this court were to characterize the language of the lease as ambiguous, the same conclusion would be reached. The, defendant argues that an ambiguity in the lease must be construed in favor of the lessee as a matter of law. The Supreme Court has stated, however, that "the general rule that, where there is an ambiguity, the lessee is favored . . . does not mean that any solution of a claimed ambiguity, if proposed by a lessee, should prevail." (Citations omitted.) Texaco, Inc. v. Rogow,150 Conn. 401, 408-09, 190 A.2d 48 (1963). "[I]f the terms of an instrument are fairly susceptible of two or more interpretations, the one which is the more equitable, reasonable and rational is to be preferred." Id., 408; see also Game-A-Tron Corp. v. Gordon,2 Conn. App. 692, 694-95, 483 A.2d 620 (1984). As discussed above, the defendant's suggested interpretation of the guest clause would be unreasonable and irrational when the lease is taken as a whole. Consequently, there is no need to resort to the rule of construction that requires that an otherwise unresolvable ambiguity be construed in favor of the lessee. The guest clause of the lease prohibits a guest from staying in the apartment for more than seven total days in a month.
The defendant argues, further, that such a guest policy may not be enforced because it improperly interferes with the defendant's right to the quiet use and enjoyment of the premises and also because it violates the defendant's constitutional right to privacy. In support of this assertion, the defendant cites two cases from other jurisdictions. Both of these cases are distinguishable. In Ashley Court Enterprises v. Whittaker,249 N.J. Super. 552, 592 A.2d 1228 (1991), a lease provision CT Page 619 prohibited "reoccurring visits or one continuous visit of seven (7) or more days and nights in a thirty (30) day period . . . Id., 558. The court ruled that the provision was unreasonable because under it "a tenant could not have the same guest on continuous weekends, entertain a relative or friend for eight continuous days or exercise a two-week visitation or regular weekend visitation with the tenant's child pursuant to a shared custody or visitation arrangement." Id. In the present case, the lease merely requires approval for guests to stay in the apartment for more than seven days per month rather then the flat prohibition presented in the New Jersey case.
In Messiah Baptist Housing Development Fund Co. v. Rosser,92 Misc.2d 383, 400 N.Y.S.2d 306 (1977), a tenant had an overnight guest in her apartment on an average of two or three nights each week. The court ruled that the tenant could not be evicted for having such a guest under a lease provision prohibiting her from "[assigning] the lease, [subletting] the premises, [giving] accommodation to any roomers or lodgers, or [permitting] the use of the premises for any purpose other than as a private dwelling solely for the TENANT and his family." Id., 400 N.Y.S.2d 308. In the present case, unlike the New York case, there is a lease provision specifically requiring approval to have guests for more than seven days. The cases are therefore distinguishable.
Finally, although it has not been cited by the parties, McKennav. Peekskill Housing Authority, 647 F.2d 332 (2d Cir. 1981), presents a similar factual situation. In that case, tenants in a housing project were required to register and obtain prior permission for any overnight visitors. The Second Circuit Court of Appeals ruled that the policy was a violation of the tenants' freedom of association under the first amendment and their right to privacy. Again, the facts of the present case are distinguishable. In McKenna, the court relied on the fact that the rule required prior approval and registration of every
overnight guest, even those staying for only one night: "Rule 5 clearly limited the tenants' freedom to associate and intruded on their privacy. The rule sought to require tenants to disclose to their landlord the identities of any individuals they wished to have as overnight guests, to have those guests approved under a hopelessly broad standard of `reasonableness' and to have the identities of their guests logged in their tenant files. The tenants had to undergo this for each friend or relative they wished to have stay or disregard the Rule and risk the loss of their lease." Id., 335. The court went on to state that "[i]f the CT Page 620 Authority's concern was that only authorized tenants occupy the apartments, it could by less intrusive means have required tenants to show that only proper individuals were living in the apartments and to explain the extended presence of non-tenants." (Emphasis in original.) Id., 335-36. The present case is exactly the situation in which "by less intrusive means" the tenant is required to "explain the extended presence of non-tenants." The lease agreement between the plaintiff and defendant cannot be said to approach the intrusiveness of a rule requiring a tenant to register and obtain prior approval for every overnight guest. The lease provision therefore is not in unconstitutional invasion of the defendant's privacy.
In conclusion, the plaintiff has proved that the guest was staying in the apartment for over seven days each month without obtaining approval. Because the lease provision in question requires approval whenever a guest stays in the apartment for more than seven days in a month, the defendant has breached the lease agreement. Furthermore, the provision is not unenforceable as unreasonable or unconstitutional.
Judgment of possession may enter for the plaintiff.
Tamborra, JTR