******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SCHALLER, J., concurring. I concur with the result reached in the majority opinion. I write separately, however, because I believe the result should be reached instead by addressing the claim by the defendant, Robert Buchman, that the trial court improperly determined that he was personally liable for the financial obligations of his mother, Maude Buchman, as a result of his having breached § IV of the admission agreement he entered into with the plaintiff nursing care facility, Meadowbrook Center, Inc.[1] In my view, the contract interpretation issue, which precedes the damage issue in the analysis, is dispositive.[2] Accordingly, I respectfully concur.

The record reveals the following relevant facts and procedural history, which are set forth more fully in the majority opinion. In order to secure admission for his mother to the plaintiff's nursing facility, the defendant entered into the admission agreement with the plaintiff in November, 2006. The agreement, drafted by the plaintiff, described the defendant as the "responsible party."[3] The defendant later failed to comply with § IV of the agreement when he did not provide the Department of Social Services (department) with information it requested with respect to the resident's Medicaid application. The plaintiff brought suit against the defendant, seeking to recover the entire debt incurred during the resident's stay at its facility between July, 2008, and May, 2009, a total sum of $99,820.78.[4] In its oral decision, the court rendered judgment in favor of the plaintiff with respect to its breach of contract claim. The court determined that the defendant, as the "responsible party" in breach of the agreement, was personally liable for the plaintiff's financial losses, measured at the Medicaid rate, of $47,561.18.[5] This appeal followed.

On appeal, it is undisputed that the defendant executed the agreement in the sole capacity as the "responsible party," as specified in the plaintiff's agreement, and that his failure to provide the pertinent information to the department constituted a breach of § IV. Notwithstanding his failure to comply with that provision, the defendant contends that the first clause of § XVIII (2) of the agreement provides that the "responsible party" is not personally liable for the resident's financial obligations. Insofar as the plaintiff seeks to hold him liable for damages predicated on the resident's financial obligations, the defendant contends that the trial court erred in holding him personally liable for breaching § IV. The plaintiff, in response, contends that the second clause of § XVIII (2) provides that the "responsible party" can be personally liable for failing to perform his obligations in the agreement. Accordingly, the issue

that must be resolved is the extent to which, as well as the circumstances under which, a "responsible party" can be held personally liable for breaching a nursing facility's admission agreement. Because the resolution of this issue requires interpretation of the relevant contractual provisions, the agreement itself is the starting point of the analysis.

The standard of review for interpretation of a contract is well settled. "[I]n the absence of a claim of ambiguity, the interpretation of [a] contract presents a question of law." (Internal quotation marks omitted.) *Reid* v. *Landsberger*, 123 Conn. App. 260, 285, 1 A.3d 1149 (*Bishop*, *J.*, concurring in part and dissenting in part), cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). On appeal, the parties do not assert that the agreement is ambiguous.[6] Accordingly, the interpretation of the agreement presents a question of law subject to plenary review. The legal principles that govern the interpretation of a contract are also well settled. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 313, 948 A.2d 318 (2008). "In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." (Internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 109–10, 570 A.2d 690 (1990). "[T]he individual clauses of a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part . . . . A contract should be construed so as to give full meaning and effect to all of its provisions . . . ." (Internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 811, 17 A.3d 40 (2011).

In the present case, the parties' dispute centers on the potential liability of the "responsible party" under the agreement. The defendant, by virtue of executing the agreement as the "responsible party," agreed to perform certain obligations related to facilitating the resident's Medicaid eligibility.[7] Although the designation "responsible party" is not defined within the four corners of the agreement, § XVIII, entitled "Obligation of the Parties," is instructive. Specifically, § XVIII (2) provides that "[t]he Responsible Party does not personally guarantee or serve as surety for payment as described in [§§] II, III, and XIV. Responsible Party liability for failure to perform any of the other obligations set forth in this agreement shall be determined in accordance with the provisions of the agreement." The first clause plainly and unambiguously provides that the "responsible party" is not a guarantor or surety

of the resident's financial obligations.[8] In contrast, the second clause contemplates a scenario in which the "responsible party" can be liable for breaching "any of the other obligations" in the agreement. The liability of the "responsible party" in such a scenario is to be determined "in accordance with the provisions of this agreement," which, absent a qualifier, means *all* of the provisions in the agreement—including, of course, the first clause of § XVIII (2). See *Cantonbury Heights Condominium Assn.*, *Inc.* v. *Local Land Development*, *LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005) (we construe contract language in accord with its natural and ordinary meaning); see also *Biro* v. *Matz*, 132 Conn. App. 272, 279, 33 A.3d 742 (2011) (to analyze effect of contract provisions, contract must be construed as a whole).

What both parties fail to acknowledge, however, is that § XVIII (2) must be construed in light of the law from which it is unmistakably derived. "[P]arties contract with reference to existing law, except when the contract discloses a contrary intention . . . . [A] statute existing at the time [a contract] is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein."[9] (Citation omitted.) *Hatcho Corp.* v. *Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985). The plaintiff, as a nursing facility that admits patients eligible for Medicaid, is governed by the admission requirements set forth in both the federal Nursing Home Reform Act and the Connecticut Patients' Bill of Rights, which parallels the federal framework. See 42 U.S.C. § 1396r et seq.; General Statutes § 19a-550. The first clause of § XVIII (2) replicates the language of 42 U.S.C. § 1396r (c) (5) (A) (ii), which provides that a nursing facility must not "require a third party guarantee of payment . . . as a condition of admission (or expedited admission) to, or continued stay in, the facility . . . ." The language of 42 U.S.C. § 1396r (c) (5) (B) (ii), however, "shall not be construed as preventing a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (*without incurring personal financial liability*) to provide payment from the resident's income or resources for such care." (Emphasis added.) The inclusion of contractual language that so closely parallels a specific statutory provision cannot be perceived as merely coincidental. Rather, any reasonable construction of the agreement will begin with the presumption that the parties intended § XVIII (2) to function in a manner consistent with the law.[10]

Construing § XVIII (2) in a manner consistent with the foregoing law, it is evident that the liability of the "responsible party" for failing to perform "any of the other obligations" in the agreement is limited to the failure to perform obligations involving "payment from the resident's income or resources for such care."[11] 42

U.S.C. § 1396r (c) (5) (B) (ii). Indeed, 42 U.S.C. § 1396r (c) (5) (B) (ii) permits a nursing facility to require an individual with access to and control of the resident's funds to sign the agreement, but it plainly states that such an individual does so *without* assuming personal liability.[12] This construction is further supported by the inclusion of terms that expressly provide for the "responsible party" to render payment to the plaintiff from the resident's resources under the precise circumstances described in 42 U.S.C. § 1396r (c) (5) (B) (ii). Section IV (5) of the agreement, for example, expressly delineates a scenario where the "responsible party" may be liable for payment of the resident's expenses: "If the Responsible Party has received a transfer of assets from the Resident that result in the Resident's ineligibility for Medicaid . . . the Responsible Party agrees that these assets, *or an amount of the Responsible Party's funds at least equal to these assets, will be used for the cost of care and services rendered to the Resident* until the Resident is determined to be eligible for Medicaid." (Emphasis added.) Moreover, this court previously has held that an obligation identical to the one found in § V of the agreement gave rise to responsible party liability for payment.[13] In *Sunrise Healthcare Corp.* v. *Azarigian*, 76 Conn. App. 800, 821 A.2d 835 (2003), this court determined that the responsible party was liable "*only* for her handling of the [resident's] assets and *only* to the extent that [the resident's] assets would cover outstanding payments owed to the plaintiff." (Emphasis added.) Id., 808. In *Sunrise Healthcare Corp.*, the responsible party was not held liable for the resident's financial obligations, but for the misappropriation of funds "that belonged at all times to [the resident]" and that the agreement *required to be used for payment to the facility*. Id. The responsible party's potential liability for failing to appropriate the resident's funds for payment to the facility as required by the agreement "is analogous to a trustee's liability for an unauthorized use of trust property. Just as the [responsible party] is bound by the terms of the [agreement], so a trustee must act in accordance with the terms of the trust instrument." Id., 809. Stated differently, the responsible party was liable only for using the *resident's funds* for purposes other than *payment to the facility* in violation of the agreement.

The question in the present case, by contrast, is whether the "responsible party" can be held personally liable for the resident's financial obligations as a result of failing to perform "other obligations" that do not involve the appropriation of the resident's funds but, rather, involve merely helping to secure Medicaid benefits for the resident. Specifically, the "other obligations" that the defendant failed to perform are found in § IV of the agreement, entitled "Resident's Assets: Medicaid Assistance." It appears that the defendant's failure to provide the department with the information it

requested in connection with the resident's Medicaid application constituted a breach of § IV (2) and (4), or both.[14] Section IV (2) provides that "[t]he . . . Responsible Party agree[s] to provide all information that may be requested by the [department] in connection with the [Medicaid] application in accordance with any deadlines established by the department." Section IV (4) provides in relevant part that "[t]he . . . Responsible Party agree[s] to act promptly and expeditiously to establish and maintain eligibility for Medicaid . . . ." Pursuant to § XVIII (1), the defendant agreed to "undertake faithfully" his obligations under § IV. The trial court determined that the defendant was personally liable for $47,561.18 as a result of failing to perform his obligations under § IV. But neither § IV (2) nor (4) involves an obligation requiring the "responsible party" to appropriate the resident's funds for payment to the plaintiff. When an individual with legal access to a resident's income signs an admission agreement, he or she does so "without incurring personal financial liability . . . ." 42 U.S.C. § 1396r (c) (5) (B) (ii). "Personal liability" is defined as "[a] kind of responsibility for the payment or performance of an obligation which exposes the personal assets of the responsible person to payment of the obligation." Black's Law Dictionary (6th Ed. 1990). The court held the defendant personally liable under the agreement for damages predicated on the *resident's outstanding financial obligations*, not the sum of the resident's funds or assets that were under the defendant's control and not appropriated for payment to the plaintiff.[15] The agreement does not subject the "responsible party" to personal liability for the resident's financial obligations. The plain and unambiguous language of § XVIII (2) states that the "responsible party" is not a guarantor or surety for payment of the resident's financial obligations. The agreement is devoid of any language providing an exception to this rule for any breach by the "responsible party." Accordingly, the trial court's conclusion to the contrary was improper. The defendant is not personally liable for the resident's financial obligations as a result of failing to perform the obligations in § IV (2) and (4).[16]

In sum, the plaintiff was not without a remedy for the defendant's breach but, instead, is simply without the remedy it wants to have and now seeks.[17] By virtue of the contract language that the plaintiff, itself, drafted, the plaintiff foreclosed the possibility of recovering the resident's outstanding financial obligations from the defendant personally for this breach. It is axiomatic that courts do not impose liability where none exists. See, e.g., *Herbert S. Newman & Partners*, *P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 759, 674 A.2d 1313 (1996) (contracts must be enforced as drafted, not enforced to relieve party from difficulties); see also *Gibson* v. *Capano*, 241 Conn. 725, 732, 699 A.2d 68 (1997) (courts do not rewrite contracts for

parties). This principle is at its apogee where both the language of the contract and the statute from which it is derived plainly indicate the absence of liability. When an individual with legal access to a resident's income signs an admission agreement, he or she does so "without incurring personal financial liability . . . ." 42 U.S.C. § 1396r (c) (5) (B) (ii). If Congress intended that these individuals could incur personal liability for the resident's financial obligations by executing an admission agreement, it certainly would not have used the language "without incurring personal financial liability."[18]

I concur with the majority insofar as it reverses the judgment of the trial court with direction to render judgment in favor of the defendant on remand. Respectfully, however, I would do so on the ground set forth in this opinion.

[1] This claim, which was properly raised by the defendant on appeal, was argued by both parties in their briefs and during oral argument before this court.

[2] See *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 494 n.12, 746 A.2d 1277 (2000) ("[b]ecause we conclude that the defendant improperly was held liable for breach of contract, we do not address the parties' respective claims as to the proper measure of damages").

[3] Carole Burnham, the plaintiff's director of finance, testified that the defendant did not have any role in drafting the admission agreement.

[4] This sum represented the private pay rate and was later reduced by stipulation of the parties to $47,561.18. The stipulated sum represents the Medicaid rate. See footnote 8 of the majority opinion.

[5] The court stated that "with or without the conservator's designation, [the defendant] was personally liable as the responsible party who signed the contract."

[6] The majority references *Sturman* v. *Socha*, 191 Conn. 1, 463 A.2d 527 (1983). *Sturman*, an opinion from our Supreme Court, addressed a claim that the term "responsible party" was ambiguous. *Sturman*, however, was decided nearly five years prior to the legislative reforms of the Medicaid program in 1988. See Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, 101 Stat. 1330. Moreover, the admission agreement at issue in *Sturman* was executed on August 26, 1974, nearly fourteen years prior to these reforms. *Sturman* v. *Socha*, supra, 2–3. In light of the impact this legislation had on the meaning of the term "responsible party," as it is used in nursing facility admission agreements, and the absence of any claim of ambiguity, *Sturman* is inapposite to the present case.

[7] With the exception of § V, which is a conditional promise, the responsible party's obligations in the agreement are wholly contained in § IV. Section IV outlines various duties of the responsible party within the context of the Medicaid application process.

[8] Sections II, III, and XIV cover payment, security deposits, and total per diem rate, respectively. The foregoing provisions are the exclusive obligations of the resident under the agreement.

[9] Although the parties did not refer to the relevant Medicaid law before this court, it is axiomatic that we determine "the intention of the parties . . . from the language of the [contract] in . . . light of the circumstances surrounding the parties *at the execution of the instrument* . . . ." (Emphasis added.) *Hatcho Corp.* v. *Della Pietra*, 195 Conn. 18, 20, 485 A.2d 1285 (1985). The relevant statutes were in effect at the time the parties executed the agreement.

[10] The majority devotes significant analysis to the notion that the agreement complies with the relevant federal statutes and that the provisions therein do not "operate as an absolute ban on third party liability in the nursing home contract context . . . ." See part III A of the majority opinion. There is no dispute that the agreement complies with federal law and that third party liability is not at issue in the present case. What does not follow from the majority's analysis is the conclusion that "holding a responsible party personally liable [for failing to comply with contractual obligations in the agreement] does not run afoul of federal law." See part III A of the

majority opinion. The issue is whether the responsible party can be held personally liable for the resident's financial obligations as a result of breaching the agreement.

In its complaint, the plaintiff alleged that "Maude Buchman's residency . . . from July 2008 through May 2009 was *unpaid*, and further *as a result of the Medicaid denial*, there is no insurance coverage, public or private that is available to pay for this time period. The plaintiff is owed [$47,561.18] *as a result of Maude Buchman's residency during this time period*." (Emphasis added.) See footnote 6 of the majority opinion. The complaint further alleged that "[a]s a result of the defendant's breach of the [agreement], the plaintiff is owed [$47,561.18]." The plaintiff's alleged losses are predicated on the resident's financial obligations in the agreement.

[11] The majority states that this opinion "suggests that the scope of the defendant's liability, and hence any ensuing remedies, must be expressly provided for in the agreement." See footnote 15 of the majority opinion. Nowhere does this opinion make such a suggestion. Section XVIII (2) functions to limit the responsible party's *liability* under the agreement. Specifically, it provides that the responsible party is not personally liable for the resident's financial obligations. The agreement does not limit the plaintiff's remedies.

[12] "The legislative history [of 42 U.S.C. § 1396r] reveals that Congress was concerned with prohibiting [nursing facilities] from requiring a person, such as a relative, to accept responsibility for the charges incurred by a resident, unless that person is authorized by law to disburse the income or assets of the resident. In such allowable cases, the person providing the guarantee *assumes no personal liability*. He or she *only* promises to make payment out of the resident's financial holdings. . . . [Section 1396r (c) (5) (B) (i) and (ii)] . . . prohibit[s] the facility from requiring a person other than the resident to assume personal responsibility for any cost of the resident's care." (Emphasis added.) 56 Fed. Reg. 48,841 (September 26, 1991) Medicare and Medicaid; Requirements for Long Term Care Facilities (amending 42 C.F.R. § 483.12).

[13] Section V of the agreement, entitled "Responsible Party Control of or Access to Resident's Funds," provides that "i[f] the Responsible Party has control of or access to the Resident's income and/or assets, the Responsible Party agrees that these funds shall be used for the Resident's welfare, *including but not limited to making prompt payment for care and services rendered to the Resident in accordance with the terms of this agreement*." (Emphasis added.)

[14] The trial court did not specify which provision of § IV the defendant breached. The record reveals that the plaintiff, in its complaint, alleged that the defendant breached the agreement by failing "to provide [the department] with the information they sought within the timeframes they sought it in order to review [the resident's] Medicaid application . . . ." In addition, it reveals that the court, in its oral decision, determined that the defendant submitted an application for Medicaid, but did not provide information as requested by the department. The plaintiff, in its brief submitted to this court, indicates that the defendant breached both § IV (2) and (4).

[15] The agreement obligated the responsible party to pay the plaintiff only to the extent that it had access to and control of the resident's resources and, accordingly, the responsible party is personally liable only to the extent that it had access to and control of such resources and *used them in violation of the agreement*. See *Sunrise Healthcare Corp.* v. *Azarigian*, supra, 76 Conn. App. 808 ("[t]he defendant is liable *only* for [her] handling of [the resident's] assets and *only* to the extent that [the resident's] assets would cover outstanding payments owed to the plaintiff" [emphasis added]). There is no evidence in the record establishing that the defendant used the resident's resources for purposes other than payment to the facility. To the contrary, the record indicates that the resident no longer had "income or resources available to pay for care in the facility . . . ." 42 U.S.C. § 1396r (c) (5) (B) (ii).

[16] The majority disagrees with this conclusion, stating that it cannot agree with the notion "that a responsible party who breaches a specific contractual obligation that it voluntarily agreed to perform and *which allegedly resulted in the nonpayment of tens of thousands of dollars in nursing care costs* nevertheless is immune from liability." (Emphasis altered.) See part III C of the majority opinion. The majority, however, expressly determined that the defendant's breach did not result in the "nonpayment" of any sum. See id.

In addition, the payment of nursing care costs was the exclusive obligation of the resident under § II of the agreement. Although the defendant's breach resulted in the denial of the resident's Medicaid application, Medicaid bene-

fits were to be paid to the plaintiff pursuant to *the resident's payment obligations* under § II. Section XVIII (2) states: "The Responsible Party does not personally guarantee or serve as surety for *payment* as described in [§§] II, III, and XIV." The agreement contains no requirement that any resources other than the resident's be used to satisfy the payment obligations to the plaintiff if the resident's Medicaid application is denied. Specifically, § II provides that "[t]he resident . . . agrees to pay the . . . [nursing care costs] . . . *except to the extent that payment is made directly to the* [*plaintiff*] *by a third party such as . . . Medicaid . . . .*" (Emphasis added.) Thus, even if the breach caused the plaintiff to "lose the Medicaid money," the defendant is not personally liable for the amount Medicaid would have paid. Rather, the *resident* is liable for the amount *she did not pay*.

To be sure, the implementing regulation of 42 U.S.C. § 1496r (c) (5) provides that "[t]he facility must not require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may require an individual who has legal access to a resident's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the resident's income or resources." (Emphasis added.) 42 C.F.R. § 483.12 (d) (2). The language of the statutes and regulation plainly provides that the plaintiff could not have legally required the defendant to use his personal assets to satisfy the resident's payment obligations.

[17] The plaintiff argues that any interpretation "absolv[ing]" the defendant of liability for failing to perform his duties renders §§ IV (1) and (2) superfluous. This argument is without merit. According to § XII of the agreement, unless the resident was eligible for Medicaid, the plaintiff could have transferred or discharged the resident once her account was more than fifteen days in arrears. Thus, the plaintiff could have discharged the resident once her account was in arrears upon learning that her Medicaid application had been denied and that the resident's assets and/or funds had been depleted.

[18] Appellate courts in other jurisdictions similarly have concluded that responsible party liability is limited to the misappropriation of the resident's resources, as in *Sunrise Healthcare Corp.*, or a voluntary promise to guarantee payment, as suggested by the majority. See *Troy Nursing & Rehabilitation Center, LLC* v. *Naylor*, 94 App. Div. 3d 1353, 1356, 944 N.Y.S.2d 323 (responsible party liable only to extent resident's resources misappropriated), leave to appeal dismissed, 19 N.Y.3d 1045, 978 N.E.2d 599, 954 N.Y.S.2d 6 (2012); compare Minn. Stat. Ann. § 144.6501 (4) (d) (West 2011) ("[a] responsible party shall be personally liable only to the extent the resident's income or assets were misapplied") with *Northfield Care Center, Inc.* v. *Anderson*, 707 N.W.2d 731, 735 (Minn. App. 2006) ("if a person chooses to be a 'responsible party' and personally guarantee payment for a resident's costs, he may do so"); see also *Walton* v. *Mariner Health of Maryland, Inc.*, 391 Md. 643, 667, 894 A.2d 584 (2006) ("[A responsible party's liability] is limited to the administration and management of the resident's funds. [A responsible party] is not personally liable for the resident's nursing home care costs, unless the [responsible party], voluntarily and knowingly agrees to pay for the resident's care with the [responsible party's] own funds."). Moreover, our Superior Court recently arrived at a similar conclusion in *Athena Holdings, LLC* v. *Marcus*, Superior Court, judicial district of Danbury, Docket No. CV-10-6003581 (April 23, 2013) (responsible party liable to extent resident's resources misappropriated in violation of agreement, but not liable for resident's financial obligations as a result of breaching promise to help secure Medicaid benefits).

———————————————